**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Irving HILLISON,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Murray David JACOBSON,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jeffrey Ketchum MANSFIELD,
Defendant-Appellant.**

**Nos. 82–1525, 82–1535 and 82–1536.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 5, 1983.

Decided May 22, 1984.

As Amended on Denial of Rehearing
Oct. 11, 1984.

Patrick Swan, Asst. U.S. Atty., argued, Peter K. Nunez, U.S. Atty., Patrick Swan, Asst. U.S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.

Barton C. Shella, III, San Diego, Cal., Brennan J. Newsom, San Francisco, Cal., Juanita Brooks, San Diego, Cal., for defendants-appellants.

Before GOODWIN, TANG, and FLETCHER, Circuit Judges.

GOODWIN, Circuit Judge.

John Hillison, Murray Jacobson and Jeffrey Mansfield were each convicted of conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846, and possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841, based on evidence obtained on April 8 and 9, 1982. Each appellant appeals on the ground that the evidence used to convict him was obtained in violation of the Fourth Amendment. Jacobson additionally contends that the evidence was insufficient to support his conviction. We affirm the convictions of all three defendants.

I

FACTS

On April 7, 1982, at about 2:30 p.m., federal drug agent Gary Kircher saw appellants Hillison and Jacobson arrive at San Diego International Airport on a flight from Denver, Colorado. Jacobson was carrying a briefcase and a rectangular canvas bag; Hillison carried a backpack. The two men proceeded directly to a car rental counter where Jacobson rented a car. Kircher decided that the pair merited further surveillance because they frequently glanced about and because they appeared unduly concerned about people standing nearby.

After Hillison and Jacobson boarded the car rental shuttlebus, Kircher examined the rental agreement and found that the car was rented in the name of Murray Jacobson. He ordered surveillance of the pair as they left the airport in the rented car. The surveilling agent watched as Hillison and Jacobson stopped at an office supply store, which Jacobson entered. He emerged carrying paper goods. The two men then drove to the Pacific Shores Inn, where they checked in at about 3:30 p.m.

The next day, at about 10:00 a.m. agents followed Jacobson to the Pacific Beach Post Office, where he left a package to be delivered via "priority mail" to an Illinois address. Agent Kircher immediately requested the Post Office to segregate this

package from the normal flow of mail. Later in the morning, Hillison and Jacobson checked out of the Pacific Shores Inn. After their departure, drug agents inspected the vacated motel room, where they found brown wrapping paper and a brown paper bag that contained marijuana seeds. The investigating agents then summoned a narcotics detector dog to sniff the package Jacobson had mailed. The dog alerted strongly on the package. Based on this information, the agents obtained a warrant and searched the package at 5:00 p.m. They discovered 70.1 grams of cocaine inside.

Meanwhile, other drug agents shadowed Hillison and Jacobson, who checked into another motel called the Inn at La Jolla. At this motel, the agents first observed appellant Mansfield, driving a gold Concord automobile with Hillison and Jacobson as passengers. A check on the car revealed that it had been rented in Las Vegas, Nevada, by a man giving the name "Jerry Thurston," the agents discovered that Mansfield had rented room 42 under the name Jeffrey Mansfield. Hillison and Jacobson had rented room 44. Hillison was later observed driving Mansfield on an errand to a liquor store. The three men spent the afternoon together between the two rooms. At 7:00 p.m., Mansfield left carrying a briefcase and a paper sack. Surveilling agents followed him to the residence of an unidentified woman.

The next morning, Mansfield returned to the La Jolla motel, where he again met Hillison and Jacobson. Hillison and Jacobson left the motel shortly afterwards and drove back to the San Diego Airport, where they were arrested and searched. Packages containing over 100 grams of cocaine were found in each of Hillison's socks.

At about 11:00 a.m. Mansfield left the motel. He stopped at a fast-food restaurant, where he was arrested by drug agents. Mansfield refused to give permission to search his car. The agents held Mansfield and the car in the restaurant parking lot for five hours, while they waited for issuance of a search warrant. During this period, another drug agent inspected Mansfield's vacated room at the La Jolla motel, finding marijuana seeds and debris. When the search was executed, the trunk of Mansfield's car was found to contain 258.1 grams of marijuana and 338.2 grams of cocaine.

Each of the appellants moved to suppress the evidence against them, claiming that it had been obtained in violation of the Fourth Amendment. Each motion was denied. Each appellant was afterwards tried to the court on stipulated facts, and each was convicted.

## II

## DISCUSSION

### A. Fourth Amendment Challenge by Hillison and Jacobson.

The procedure used to investigate, arrest, and search appellants Hillison and Jacobson violated no Fourth Amendment rights. The initial phase of investigation was triggered by nothing more than the subjective assessment by drug agents that Hillison and Jacobson behaved suspiciously in the San Diego Airport. While the agents' observations might under some circumstances justify a brief stop for questioning, see United States v. Post, 607 F.2d 847, 850 & n. 3 (9th Cir.1979); United States v. Chatman, 573 F.2d 565, (9th Cir. 1977), they certainly did not give probable cause to suspect criminal activity, see Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 1323 n. 7, 75 L.Ed.2d 229 (1983). The subsequent observations that Hillison and Jacobson purchased supplies, checked into a motel, and later mailed a package did not add any new incriminating information to the agents' knowledge. If probable cause were required for the segregation of Jacobson's mailed package, the segregation and detention of the package would not have been authorized by law.

The Supreme Court has held, however, that probable cause is not needed to support a brief segregation and delay of a mailed package. United States v. Van Leeuwen, 397 U.S. 249, 253, 90 S.Ct. 1029,

1032, 25 L.Ed.2d 282 (1970). While "theoretically" an unduly long detention of mail could become unreasonable enough to intrude upon privacy interests protected by the Fourth Amendment, *id.* at 252, 90 S.Ct. at 1032, the main Fourth Amendment interest in a mailed package attaches to the privacy of its contents, not the speed with which it is delivered, *id.* at 253, 90 S.Ct. at 1032. For this reason, the Court ruled that no interest protected by the Fourth Amendment is invaded by forwarding a package on the following day rather than the day it is deposited.[1] *Id.; see also United States v. Martell,* 654 F.2d 1356, 1367–68 (9th Cir.1981) (Nelson, J., dissenting) *cert. denied* —— U.S. ——, 103 S.Ct. 3551, 77 L.Ed.2d 1397 (1983). The Court recently adhered to the holding of *Van Leeuwen,* characterizing the case as one in which "the defendant was unable to show that the invasion intruded upon either a privacy interest in the contents of the packages or a possessory interest in the packages themselves." *United States v. Place,* —— U.S. ——, 103 S.Ct. 2637, 2643 n. 6, 77 L.Ed.2d 110 (1983) (quoting 3 W. LaFave, *Search & Seizure* § 9.6, at 60; *see also id.* at 2650 n. 5 (Brennan, J., concurring).

■ This case is very similar to *Van Leeuwen.* As in *Van Leeuwen,* the drug agents segregated the package mailed by Jacobson without a sufficient basis to justify examining its contents. As in *Van Leeuwen* the agents, through independent investigation, within a few hours of the segregation acquired probable cause to believe that the package contained evidence of criminal activity. The total duration of the period of detention of the package prior to the search was nine hours, far less than the 29 hours held reasonable in *Van Leeuwen.* Based on *Van Leeuwen,* we conclude that the segregation and detention of the package mailed by Jacobson did not violate the Fourth Amendment.

■ The investigation that uncovered facts amounting to probable cause to search the package was also conducted in a lawful manner. The agents did not disturb, test, inspect, or allow the trained dog to sniff the segregated package until after they had searched the motel room vacated by Hillison and Jacobson.[2] There they discovered scraps of brown wrapping paper, ten marijuana seeds and marijuana debris, items that suggested the package mailed by Jacobson might contain marijuana. Whether or not this information gave probable cause to search the package, it certainly provided the founded suspicion, if any, needed to justify a dog sniff. *See Florida v. Royer,* 103 S.Ct. at 1328 n. 10 (plurality opinion); *see also United States v. Place,* —— U.S. ——, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983) (dictum). When the concededly reliable dog strongly alerted on the mailed package, the agents plainly had probable cause to believe that it contained illegal drugs. *United States v. Spetz,* 721 F.2d 1457 (9th Cir.1983).

■ When the search warrant authorizing examination of the package contents was executed, the agents discovered that it actually contained cocaine. They therefore had probable cause to believe that Hillison and Jacobson were engaged in criminal activity, and to arrest the pair the next morn-

---

**1.** It must be noted, however, that while the packages in *Van Leeuwen* were held for 29 hours before they were actually searched, probable cause to suspect that they contained evidence of criminal activity was obtained through independent investigation within 90 minutes after the initial segregation. *Van Leeuwen,* 397 U.S. at 252–53, 90 S.Ct. at 1032. This shorter period is arguably more significant for assessing the reasonableness of the delay. However, in this case as in *Van Leeuwen,* information obtained independently through the search of the vacated motel room provided probable cause to suspect that the package contained evidence of criminal activity within two hours of the time the package was segregated.

**2.** Jacobson challenges the search of the motel room as unsupported by probable cause. The argument lacks merit, because Hillison and Jacobson after checking out of the motel room retained no expectation of privacy in the room, and they effectively abandoned all items left behind. Consequently their Fourth Amendment rights were not violated by inspection of the room. *See United States v. Kendall,* 655 F.2d 199, 200 (9th Cir.1981); *United States v. Diggs,* 649 F.2d 731, 735 (9th Cir.1981).

ing at the San Diego airport. The search of Hillison's socks was valid as a search incident to his arrest. *See Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, (1969). No Fourth Amendment violation tainted the evidence used to convict either of these appellants.

B. *Fourth Amendment challenge by Mansfield*

■ Although the investigating agents properly learned that Hillison and Jacobson were engaged in illegal drug-related activity, the arrest of Mansfield on the morning of April 9 was not lawful unless the agents had probable cause to believe that Mansfield was also engaged in such activity. Arresting officers have probable cause to make warrantless arrests if, at the moment of arrest, facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense. *United States v. Martin,* 509 F.2d 1211 (9th Cir.1975), *cert. denied,* 421 U.S. 967, 95 S.Ct. 1958, 44 L.Ed.2d 455 (1975).

■ The agents at the time of arrest had observed: (1) Mansfield driving Hillison and Jacobson as passengers in his car, (2) Mansfield, Hillison and Jacobson visiting back and forth between their adjacent rooms on the afternoon of April 8; (3) Hillison driving Mansfield's car to a liquor store; and (4) Mansfield returning the next morning and meeting with Hillison and Jacobson before their departure. The agents also knew, by the time they arrested Mansfield, that Hillison and Jacobson were "dealers." The agents had some information that Mansfield's car had been leased in the name of "Jerry Thurston", while his motel room had been rented in the name of Jeffrey Mansfield. The possible use of the two names would suggest to experienced police officers that the user had something to hide. Mansfield's close association with Hillison and Jacobson suggested at least that Mansfield very probably knew what business they were pursuing. If so, Mansfield indeed had something to hide. In considering whether there was probable cause to arrest Mansfield, the court properly could take into account the experience and expertise of Drug Enforcement Administration agents observing his activity. *United States v. Lomas,* 706 F.2d 886 (9th Cir.1983.)

■ In order to find probable cause based on association with persons engaging in criminal activity, some additional circumstances from which it is reasonable to infer participation in criminal enterprise must be shown. *See United States v. Vilhotti,* 323 F.Supp. 425, 432 (S.D.N.Y.1971). One important consideration in assessing the significance of the association is whether the known criminal activity was contemporaneous with the association. 1 W. LaFave, *Search & Seizure* § 3.6, at 659–61; *see United States v. Williams,* 630 F.2d 1322, 1325 (9th Cir.1980), *cert. denied* 449 U.S. 865, 101 S.Ct. 197, 66 L.Ed.2d 83 (1980). Another is whether the nature of the criminal activity is such that it could not normally be carried on without the knowledge of all persons present. 1 W. LaFave, *Search & Seizure* § 3.6, at 658–61; *see Williams,* 630 F.2d at 1325. We have concluded above that the agents had probable cause to believe that Hillison and Jacobson were engaged in criminal activity during their association with Mansfield. Furthermore, it taxes credulity to assert that Mansfield spent as much time in Hillison's and Jacobson's company as he did during the period of surveillance without knowing about their drug dealing activity. We recognize that mere propinquity with known criminals does not, without more, give rise to probable cause. *Ybarra v. Illinois,* 444 U.S. 85, 89, 91, 100 S.Ct. 338, 341, 342, 62 L.Ed.2d 238 (1979). However, in the present case, the continued relationship between Mansfield and Hillison and Jacobson cannot be fairly termed "mere propinquity." Rather the officers' observations demonstrated close association between the three suspects over two days. This prolonged close contact and the well founded suspicion that Hillison and Jacobson were engaged in narcotics violations during the time of their association with Mansfield gave the of-

ficers reason to infer that Mansfield was working with the other two. Shortly after stopping Mansfield, the officers knew that marijuana seeds and debris were found in Mansfield's abandoned motel room. Also, Mansfield initially stated that he had only met his girlfriend on his visit to San Diego. These facts constitute more than mere propinquity. *See United States v. Atkinson,* 450 F.2d 835, 838 (5th Cir.1971), *cert. denied,* 406 U.S. 923, 92 S.Ct. 1790, 32 L.Ed.2d 123 (1972). We hold that the officers had probable cause to arrest Mansfield.

C. *Challenge by Jacobson to the Sufficiency of the Evidence*

■ Appellant Jacobson's conviction[3] was supported by properly admissible evidence that he had mailed a package that contained 70.1 grams of cocaine. From this evidence, a rational trier of fact could conclude that Jacobson engaged in a conspiracy to distribute a controlled substance and that he possessed cocaine with intent to distribute. The evidence was therefore sufficient to support his conviction. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

Affirmed as to all three defendants.

FLETCHER, Circuit Judge, dissenting in part:

I concur in the majority opinion upholding the convictions of Hillison and Jacobson, but I respectfully dissent from section II B, which upholds the conviction of Mansfield. The majority finds probable cause to arrest Mansfield based simply on his association with Jacobson and Hillison and little else. The agents saw Mansfield with Hillison and Jacobson in Mansfield's car and around the motel where they all were staying. They also had some information Mansfield had rented a car in a different name from the name he used to rent his motel room. This was the sum of the arresting officers' knowledge about Mansfield when they stopped him in the McDon-

ald's parking lot. On the basis of this information, they held him for five hours awaiting a warrant to search the trunk of his car.

The majority acknowledges, as it must, that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause." *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979); *see also United States v. Di Re,* 332 U.S. 581, 593, 68 S.Ct. 222, 228, 92 L.Ed. 210 (1948). In *United States v. Vaughan,* 718 F.2d 332 (9th Cir.1983), "the only suspicion the agents had of Vaughan's criminal activity was his presence in the car with Otero and Lahodny." 718 F.2d at 335 n. 7. We held this "insufficient under *Ybarra*" to constitute probable cause for a full scale search. *Id.*

The majority struggles to elevate the significance of Mansfield's possible use of a false name to justify the five hour detention and subsequent search. But the use of two names is not illegal and the agents could articulate no common sense basis for believing that Mansfield was breaking any specific law. On the contrary, Mansfield's conduct was perfectly consistent with the common situation where friends or acquaintances, traveling in the same part of the country, arrange to meet in order to enjoy each other's company. The agents had reason to believe that Hillison and Jacobson possessed drugs, but they had no knowledge of facts that Mansfield had other than ordinary social purposes in mind. Even if I were to agree with the majority that Mansfield was likely to become aware of Hillison's and Jacobson's possession of drugs, during the course of their visiting together at the motel, there was no evidence whatsoever that Mansfield was, himself, involved in the criminal activity of the others.

The majority suggests that an important consideration is whether the nature of the criminal activity is such that it could not normally be carried on without the knowl-

**3.** Appellant Hillison does not challenge the sufficiency of the evidence supporting his convic- tion.

edge of persons present. I agree. Here, the crimes committed by Hillison and Jacobson were *possession* of and conspiracy to possess narcotics. A visitor to their hotel room would not know that these crimes were being committed unless informed by one of the occupants. And, even if he knew, he need not be involved in the crime.

Other factors that courts have identified as sufficient, when added to association with criminals, to provide probable cause to arrest or search are not present here. The agents did not know the content of conversations among Mansfield and the others, and they saw nothing pass among them. *See Sibron v. New York*, 392 U.S. 40, 62, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968). The agents had not previously observed drug transactions between Hillison, Jacobson and others at the motel. *See Ker v. California*, 374 U.S. 23, 35, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726 (1963). At no time was Mansfield observed to be within plain view of contraband. *See United States v. Vilhotti*, 323 F.Supp. 425, 432 (S.D.N.Y. 1971). Under the circumstances of this case, we cannot say that Mansfield was "inextricably enmeshed" with the others in a drug-related venture. *See United States v. Baker*, 567 F.2d 924, 926 (9th Cir.), *cert. denied*, 439 U.S. 818, 99 S.Ct. 80, 58 L.Ed.2d 109 (1978).

The majority opinion is at odds with *United States v. Chamberlin*, 609 F.2d 1318 (9th Cir.1979), where we invalidated a 20 minute detention of the defendant by a police officer who had more cause to suspect the defendant than did the officers in this case. In *Chamberlin*, an officer observed two individuals with known criminal records late at night in a bad area of San Diego. They quickened their pace when the officer drove by and when he returned they fled. The officer caught one and held him while searching for the other. We held a *Terry* stop justified but no *more*, relying on *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), as did the *Ybarra* court. *See Vaughan*, 718 F.2d at 335. The officers' conduct here is much like that of the officers in *United States v. Beck*, 598 F.2d 497 (9th Cir.1979), in which our court held illegal the arrest of Beck and others suspected of drug activity. We observed, "that the stop and detention [of the individuals on the way to the airport after four days surveillance that gave rise to suspicions but no more] was a pretext or subterfuge to enable the officers to conduct a warrantless search .... The stop ... did not occur under the usual exigent circumstances ... it was simply the last chance the officers had." *Id.* at 502.

I would hold that Mansfield's five hour detention following an investigatory stop was an unlawful arrest requiring suppression of the evidence seized in the subsequent search of the automobile.

Mansfield's conviction should be reversed.