UNITED STATES of America, Plaintiff,

v.

Gerald TERPAK, Defendant.

Crim. No. 86–01452.

United States District Court,
D. Hawaii.

April 30, 1987.

Daniel A. Bent, Michael A. Santoki, U.S. Attys. Office, Honolulu, Hawaii, for plaintiff.

Philip Bogetto, Honolulu, Hawaii, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS

KAY, District Judge.

The defendant's motion to suppress evidence came on for hearing before this court on April 24, 1987. Mr. Phillip Bogetto appeared on behalf of the defendant and Mr. Michael Santoki appeared on behalf of the government. The court, having reviewed the motion, the memoranda in support and in opposition thereto, having heard the arguments of counsel and being fully advised in the premises therein, finds and orders as follows:

With the instant motion, the defendant seeks a court order suppressing approximately 800 grams of marijuana which he had mailed from the Pahoa, Hawaii post office to an addressee in Los Angeles, California. The 800 grams of marijuana were uncovered by United States Postal Inspectors on October 27, 1983 during a search conducted pursuant to a search warrant which was issued by a United States Magistrate earlier that day. The warrant issued on the basis of probable cause to search which was established by a positive canine alert indicating a likelihood that the subject parcel contained contraband. *U.S. v. Hillison*, 733 F.2d 692, 696 (9th Cir.1984) (a reliable positive dog alert supplies probable cause to search).

The defendant does not contest the validity of the search warrant. Neither does the defendant argue that the period of detention of the mailed parcel, prior to its exposure to the canine sniffer, was violative of his constitutional rights. Rather, the defendant premises his motion to suppress on the allegedly unreasonable length of delay between the positive dog alert to the parcel, indicating a likelihood that the parcels contained contraband, and the subsequent issuance of a search warrant for the package. The defendant argues that this delay offended his possessory interest in the parcel, such interest being protected by the Fourth Amendment to the United States Constitution which proscribes unreasonable seizures.

The dates relevant to this motion to suppress are here set forth. The subject parcel was mailed from Pahoa, Hawaii on October 17, 1983. Presumably, the parcel was segregated by postal authorities who forwarded it to Honolulu on October 20, 1983 where it received a positive alert from a trained narcotics dog later that day. A search warrant was obtained for the parcel on October 27, 1983, seven days after the positive dog alert.

In the case of *U.S. v. Neer*, Crim. No. 86-1451, this court examined a very similar factual situation. In *Neer*, a trained narcotics dog alerted positive to the presence of contraband in three packages but warrants to search the packages were not procured until eight to fifteen days following the establishment of probable cause to search. On the facts of *Neer*, this court ruled that the periods of delay between the establishment of probable cause and the procurement of the search warrants were unreasonable and unconstitutionally infringed the defendant's Fourth Amendment rights to be secure in his possession of parcels he had mailed by priority mail.

The parcel containing the marijuana sought to be suppressed in the instant motion, as well as the parcels which were the subject of the *Neer* suppression motion, were intercepted during the course of a "pilot program" which eventually became Operation Pele, a "sting operation" intended to impede the flow of marijuana from Hawaii to the Mainland via the United States mail.

At the hearing on this motion to suppress, United States Postal Inspector Daniel Ryan testified as to the mechanics of the "pilot program," and this court believes that Inspector Ryan's testimony clarifies the cause of the delay in the procurement of the search warrant for the packages once probable cause to search had been established. When the "pilot program"

was instituted, it was based in Honolulu, Hawaii; "suspicious" packages were to be segregated and forwarded to a central location in Honolulu for processing. The two Postal Inspectors who administered the "pilot program" anticipated that they would receive a total of approximately twenty "suspicious" packages each week. This expectation proved to be grossly underestimated; during the first week of the "pilot program" alone, approximately 150 packages were forwarded to Honolulu for processing. Operation Pele was eventually based on the Island of Hawaii as it was determined that most of the illicit drug flow through the mails originated on that island.

When faced with this virtual deluge of "suspicious packages," it became apparent to the two Postal Inspectors who staffed the "pilot program" that the operation's staff needed to be substantially increased from the two Postal Inspectors and one part-time secretary who administered the pilot stage of the operation. Nevertheless, this court finds that the "skeletal" staff who administered the "pilot program" acted with diligence in attempting to process promptly the first week's 150 "suspicious" parcels. The government's diligence in obtaining their search warrants is a consideration in the inquiry into the reasonableness of the delays presented by the instant motion to suppress. *U.S. v. Place*, 462 U.S. 696, 709, 103 S.Ct. 2637, 2645–46, 77 L.Ed.2d 110 (1983). Furthermore, this court finds that once the extent of the mail drug flow was accurately gauged by the United States Postal Inspectors, the "skeletal" staff was increased. Thus, this court is convinced that at all times during this "sting operation," extending from the time of the "pilot program" forward, the government officials have acted with good faith and diligence.

Nevertheless, this court finds that the protracted delay of seven days in this case from the establishment of probable cause to the procurement of the search warrant was constitutionally prohibited. When this court weighs the legitimate needs of society and law enforcement offi-cials to stem the dangerous flow of harmful drugs throughout the United States against individuals' interests to be secure in their effects against unreasonable seizures, as guaranteed by the Fourth Amendment, there are occasions on which society's interest in law enforcement will have to yield. This is one such case.

The government has cited this court to the case of *Segura v. U.S.*, 468 U.S. 796, 806, 104 S.Ct. 3380, 3386, 82 L.Ed.2d 599 (1984), as authority for the proposition that the Supreme Court "has frequently approved warrantless seizures of property, on the basis of probable cause, for the time necessary to secure a warrant, where a warrantless search was either held to be or likely would have been impermissible." This court finds that the *Segura* case is inapposite for two reasons. First, the *Segura* case presented the Supreme Court with a situation wherein the period of delay before the issuance of the search warrant, and consequently the period of warrantless "seizure," was only nineteen hours. The delay in the instant case gave rise to a warrantless seizure of seven days. Second, the delay of seven days in the instant case far surpassed the period of time "necessary to secure a warrant." As noted below, testimony received by this court in the hearing on the motion to suppress in the *Neer* case indicates that a warrant to search the defendant's parcel in the instant case could have been obtained in as little as 1½ days.

In *U.S. v. Van Leeuwen*, 397 U.S. 249, 251, 90 S.Ct. 1029, 1031–32, 25 L.Ed.2d 282 (1970), the Supreme Court wrote that "[i]t has long been held that first-class mail such as letters and sealed packages subject to letter postage—as distinguished from newspapers, magazines, pamphlets, and other printed matter—is free from inspection by postal authorities, except in the manner provided by the Fourth Amendment." The *Van Leeuwen* case involved the twenty nine hour detention of a suspicious first class parcel by postal authorities pending issuance of a search warrant. The Court noted that "[t]he only thing done here on the basis of suspicion was deten-

tion of the packages" and went on to hold that "detention of mail could at some point become an unreasonable seizure of 'papers' or 'effects' within the meaning of the Fourth Amendment." *Id.* at 252, 90 S.Ct. at 1032. In concluding, the Court held that the twenty nine hour delay between mailing and issuance of a search warrant was not unreasonable within the meaning of the Fourth Amendment, but cautioned that "[t]he rule of our decisions certainly is not that first-class mail can be detained 29 hours after mailing in order to obtain the search warrant needed for its inspection." *Id.* at 253, 90 S.Ct. at 1032–33.

In *U.S. v. Hillison, supra,* the Ninth Circuit had an opportunity to address the issue of whether the detention of first class mail pending issuance of a search warrant was violative of the Fourth Amendment. In *Hillison,* one of two defendants was observed mailing a package which federal agents suspected contained drugs. The package was segregated and two hours of further investigation supplied probable cause for the issuance of a search warrant which was issued and executed within nine hours after the package had been mailed. Relying upon the Supreme Court holding in *Van Leeuwen, supra,* the Ninth Circuit held that the delay of nine hours had not violated the Fourth Amendment.

This court believes that the opinions in *Van Leeuwen* and *Hillison* stand for the proposition that a person who deposits a first class parcel into the "stream of mail" retains a possessory interest in that parcel which cannot be unreasonably seized without running afoul of the Fourth Amendment proscription against unreasonable seizures.

This court finds that the seven day delay between the time when the trained narcotics dog alerted positive to the defendant's parcel and the issuance of the search warrant in the instant case was unreasonable. This court makes this finding with full cognizance of the fact that the "skeletal" staff which flawed the "pilot program" and which occasioned the unconstitutional seizure in the instant case was cured within a matter of days by an increased staff on Operation Pele. Nevertheless, at the hearing on the motion to suppress in the *Neer* case, the government's witness testified that search warrants can be procured for a package for which probable cause to search exists within 1½ days. Had the search warrant in the instant case been obtained in 1½ days, the detention of the defendant's parcel prior to the search would not have offended the Fourth Amendment. The delay of seven days in the instant case, however, constituted an unreasonable seizure of the defendant's legitimate possessory interest in his first class parcel.

It should be noted that with this opinion this court does not rule at what point between 1½ days and seven days a detention of first class mail becomes unreasonable. This court's ruling is made in light of the particular circumstances of the instant case; that is, the large volume of suspicious packages netted by postal authorities in the "pilot program" which led to Operation Pele and the correspondingly large number of search warrants sought by postal authorities. Furthermore, it bears repetition that this court finds that the delay which gave rise to the Fourth Amendment violation in this case was not the product of bad faith. Nevertheless, in light of the factual and legal issues presented by this motion to suppress, with particular regard to the fact that a search warrant could have been obtained in 1½ days without infringing a constitutionally protected possessory interest of the defendant, this court finds that the detention of first class mail lasting for a period of seven days was violative of the Fourth Amendment.

THEREFORE, it is hereby ORDERED that the evidence sought to be excluded by the defendant in his motion to suppress is GRANTED.