UNITED STATES of America,
Plaintiff–Appellant,

v.

Neem Shiva DASS and Ma Surina
Dasi, Marvin Neer, Gerald
Terpak, Defendants–Appellees.

Nos. 87–1006, 87–1091 and 87–1112.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 15, 1987.

Decided June 13, 1988.

Kathleen A. Felton, Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Hayden Aluli, Asst. Federal Public Defender, Honolulu, Hawaii, for defendant-appellee Dass.

Jack F. Schweigert, Schweigert & Associates, Honolulu, Hawaii, for defendant-appellee Neer.

Philip D. Bogetto, Honolulu, Hawaii, for defendant-appellee Terpak.

Before CHOY, ALARCON and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

The government appeals these cases in which the district court granted suppression motions on the ground that the length of the warrantless seizures violated the fourth amendment. We affirm.

## FACTS AND PROCEEDINGS BELOW

In the fall of 1983, law enforcement authorities began an effort to catch marijuana growers on the Island of Hawaii who used the mail to distribute their crops. In this operation, agents collected suspicious packages at certain post offices on the Island of Hawaii for dog sniffs. If the dog sniff suggested the presence of marijuana, the agents would detain the packages until a magistrate issued a search warrant.

In October and November 1983 the agents detained packages mailed by the four appellees. Agents detained appellees' packages for periods from seven to twenty-three days before they secured search warrants. Once they executed the search warrants, the agents found marijuana in every package. In the subsequent prosecutions, the district court granted suppression motions because it found the seizures to be unreasonable. 666 F.Supp. 1424.

## DISCUSSION

The United States claims that the length of these warrantless seizures (seven to

twenty-three days) failed to violate the fourth amendment. The government argues that: (1) despite the delay, the seizures remained reasonable; (2) the fourth amendment does not protect contraband; and (3) the government did not benefit from the delay. We review these arguments *de novo*. *See United States v. Miller*, 769 F.2d 554, 556 (9th Cir.1985) (a warrantless seizure is a mixed question of law and fact subject to *de novo* review). *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir.1986) (we review motions to suppress *de novo* ).

The Supreme Court and this circuit have found short delays in obtaining a search warrant for mailed packages to be reasonable. In *United States v. Van Leeuwen*, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970), the Supreme Court upheld a twenty-nine hour seizure of a mailed package prior to the issuance of a search warrant. However, when upholding this warrantless seizure, the justices narrowly limited their decision to the facts. They wrote:

> The rule of our decision certainly is not that first-class mail can be detained 29 hours after mailing in order to obtain the search warrant needed for its inspection. We only hold that on the facts of this' case—the nature of the mailings, their suspicious character, the fact that there were two packages going to separate destinations, the unavoidable delay in contacting the more distant of the two destinations, the distance between Mt. Vernon and Seattle—a 29–hour delay between the mailings and the service of the warrant cannot be said to be "unreasonable" within the meaning of the Fourth Amendment.

*Id.* at 253, 90 S.Ct. at 1032–33.

In *United States v. Hillison*, 733 F.2d 692 (9th Cir.1984), this circuit affirmed a warrantless seizure of nine hours on the basis of *Van Leeuwen*. In the process, *Hillison* suggested that *Van Leeuwen* created an outer limit of twenty-nine hours for a finding of reasonableness. The panel wrote: "[T]he period of detention of the package prior to the search was nine hours,

far less than the 29 hours held reasonable in *Van Leeuwen*." *Id.* at 696.

■ Here, the delays far exceeded the 29 hours found reasonable in *Van Leeuwen* —the shortest delay lasted seven days and the longest more than three weeks. Moreover, according to the district court, the delays could have been much shorter (36 hours) if the police had acted diligently. The government, in effect, asks us to hold that law enforcement officials may obtain search warrants for mailed packages at their leisure.

We decline the government's invitation and we conclude that these seizures violate the fourth amendment. This conclusion is compelled by the Supreme Court's holding in *Van Leeuwen*. In that case the Supreme Court expressly avoided validating the proposition that authorities can detain mailed packages until they can obtain a search warrant *even though the delay lasted only 29 hours*. *Van Leeuwen*, 397 U.S. at 253, 90 S.Ct. at 1032. Instead, the Court upheld the 29 hour detention on the facts. *Id.* Therefore, as *Hillison* suggests, we are reluctant to extend the *Van Leeuwen* outer boundary of 29 hours to a period not measured in hours, but rather in days and weeks.

■ We also reject the government's assertion that there is a contraband exception to the fourth amendment. *See United States v. Jacobsen*, 466 U.S. 109, 114, 104 S.Ct. 1652, 1657, 80 L.Ed.2d 85 (1984) ("a warrantless search could not be characterized as reasonable simply because, after the official invasion of privacy occurred, contraband is discovered"). Fourth amendment protection is not premised upon the nature of the item ultimately discovered, but rather upon the seizure itself. *See United States v. Place*, 462 U.S. 696, 700, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983). *See also United States v. Mendez–Jimenez*, 709 F.2d 1300, 1304 (9th Cir.1983); *United States v. Kaiyo Maru No. 53*, 699 F.2d 989, 994 (9th Cir.1983).

Finally, we reject the government's argument that it did not benefit from the delay. The police established probable cause at the moment of the dog sniff; therefore, it

argues, the government's "constitutional position" did not change as the seizure continued. Such a contention undercuts two goals of the fourth amendment—deterring unreasonable police behavior, *Steagald v. United States*, 451 U.S. 204, 215, 101 S.Ct. 1642, 1649, 68 L.Ed.2d 38 (1981) (the fourth amendment is designed to prevent, not simply redress, unlawful police action), and judicial determination of probable cause. *Id.* at 212, 101 S.Ct. at 1647. The government's theory would allow an unlimited period of seizure without judicial intervention; to accept its argument would nullify the seizure portion of the search and seizure clause of the fourth amendment. This we will not do.

ALARCON, Circuit Judge, dissenting:

### I.

The question presented in this case is whether a delay of 16 to 23 days in obtaining warrants to search five packages lawfully seized from the United States mail was unreasonable in light of the totality of the circumstances. The majority has concluded that the delay was unreasonable as a matter of law on the basis of our decision in *United States v. Hillison*, 733 F.2d 692 (9th Cir.1984). According to the majority, in *Hillison* we interpreted the Supreme Court's decision in *United States v. Van Leeuwen*, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970) as "creat[ing] an outer limit of twenty-nine hours for a finding of reasonableness." Majority at 415.

I respectfully dissent. I would reverse the district court's order suppressing the marijuana found within the packages when they were searched pursuant to the warrants. I would hold that the delay in obtaining the search warrants was reasonable in light of the totality of the circumstances facing the government in this case.

### II.

The evidence in this case is uncontroverted. The defendants mailed five packages of marijuana at post offices on the island of Hawaii on October 29 thru November 5 of 1983. These packages, along with a group of more than 1,000 others, were seized in the fall of 1983 by members of "Operation Pele," a joint state/federal task force assembled to interdict the shipment of marijuana by mail from the state of Hawaii. The packages were seized at ten selected post offices on the island of Hawaii on the basis of a nine-point profile developed by the Postal Inspection Service to identify packages likely to contain controlled substances. The defendants acknowledge that the seizure of the packages pursuant to the profile was lawful.

Within two days of their seizure, the packages were transported to a police station in Hilo, Hawaii where they were exposed to a dog trained in narcotics detection. The dog "alerted" on an overwhelming number of packages. The task force members decided to seek search warrants for 441 (including the five mailed by the defendants), and to return the rest to the mail so as to allay suspicions on the part of drug dealers that packages were being seized. The defendants acknowledge that the government had probable cause to obtain search warrants for the packages on the basis of the dog alert.

Task force members in Hilo prepared the search warrant applications at a rate of approximately 75 per week. They had originally anticipated that they would need to prepare only 10–20 warrant applications per week and hence had only been assigned one full-time secretary. To bring the total to 75, they enlisted the aid of another secretary and devised a standardized affidavit form. Once the applications were prepared, they were sent to the United States Attorney's office in Honolulu on the island of Oahu for review. The United States Attorney's office corrected the warrants and sent them back to the task force in Hilo for retyping. When the correction process was complete, the warrant applications were submitted to a magistrate. All told, between 16 and 23 days elapsed between the time the dog alerted to the packages and the issuance of the search warrants.

### III.

The district court found that the 16–23 day delay in obtaining the warrants was "not the product of bad faith on the part of the government," but instead resulted from the unanticipated flood of packages which were alerted to by the dog. Nevertheless, the district court suppressed the evidence obtained in the searches of the packages because "the diligence exhibited by the government ... was less than ideal, even given the circumstances." According to the district court, "[o]ther than the request for an additional secretary, the government was unresourceful in its response to the unexpected circumstances it encountered."

The district court failed to apply the proper standard to measure compliance with the requirements of the fourth amendment. The test for determining whether a delay is violative of the fourth amendment is not whether the government acted "ideal[ly]," but " 'whether, under the totality of the circumstances, it is reasonable.' " *United States v. Anderson*, 663 F.2d 934, 941 (9th Cir.1981) (quoting *United States v. Richards*, 500 F.2d 1025, 1029 (9th Cir. 1974)). Moreover, a finding of reasonableness does not hinge upon a determination that the government pursued the least intrusive course of action. As the Supreme Court recently reiterated in *Colorado v. Bertine*, 479 U.S. 367 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987), " '[t]he real question is not what "could have been achieved," but whether the Fourth Amendment *requires* such steps ... The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative "less intrusive" means.' " (quoting *Illinois v. Lafayette*, 462 U.S. 640, 647, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65 (1983)).

If we apply the reasonableness test to the efforts of the task force members to comply with the fourth amendment warrant requirement, it is clear that the defendants' rights were not violated by the delay which occurred in this case. It is uncontroverted that the delay resulted not from bad faith or sloth on the part of government officials but because of the unanticipated number of suspicious packages that appeared to contain marijuana. The government took reasonable steps to cope with this unexpected situation by requesting and receiving additional help, and by standardizing procedures.

The seizure of the packages implicated at most only a tenuous possessory interest in the marijuana. *See Van Leeuwen*, 397 U.S. at 252–53, 90 S.Ct. at 1032; *see also United States v. Manbeck*, 744 F.2d 360, 374 n. 16 (4th Cir.1984) ("there is some doubt concerning the extent to which one may claim a property interest in contraband") *cert. denied sub. nom., O'Hare v. United States*, 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985); *but see United States v. Jeffers*, 342 U.S. 48, 52–54, 72 S.Ct. 93, 95–96, 96 L.Ed. 59 (1951) (one may claim a property interest in contraband for the purposes of the exclusionary rule). Furthermore, the impact of the seizure on that tenuous possessory interest was minimal. *See United States v. Place*, 462 U.S. 696, 718 n. 5, 103 S.Ct. 2637, 2650 n. 5, 77 L.Ed.2d 110 (1983) (Brennan, J., concurring) (" 'the mere detention of mail not in the ... [defendant's] custody or control amounts to at most a minimal or technical interference with his person or effects, resulting in no personal deprivation at all' ") (quoting *United States v. Place*, 660 F.2d 44, 52–53 (2d Cir.1981) *aff'd*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)).

Finally, the bulk of the delay came after the government had established probable cause to search the packages. This period of delay "is arguably ... [less] significant for assessing the reasonableness of the delay." *Hillison*, 733 F.2d at 696 n. 1. The district court found that the more significant period of delay—the two-day delay which occurred prior to the establishment of probable cause to search by exposure of the packages to the dog—was reasonable.

The majority concludes that our decision in *Hillison*, 733 F.2d 692, established a 29–hour bright-line test to determine the reasonableness of governmental delay in obtaining a warrant to search a package seized from the mails. Majority at 415. I believe that the majority has misread *Hilli-*

*son.* In *Hillison,* the defendants contended that the government violated their fourth amendment rights by delaying 9 hours before obtaining a warrant to search a package lawfully seized from the mails. 733 F.2d at 695–96. We held that the 9–hour delay in obtaining the warrant was reasonable in light of the totality of the circumstances. *Id.* at 696. To buttress this conclusion, we noted that the 9–hour delay was "far less than the 29 hours held reasonable in *Van Leeuwen.*" *Id.* We did not, however, interpret *Van Leeuwen* as establishing an "outer boundary" of reasonableness at 29 hours. We utilized the 29–hour period as a benchmark, not a boundary.

Indeed, the Supreme Court in *Van Leeuwen* specifically stated that it was not establishing a bright-line test of reasonableness at 29 hours:

> The rule of our decisions certainly is *not* that first-class mail can be detained 29 hours after mailing in order to obtain the search warrant needed for its inspection. *We only hold that on the facts of this case ... a 29–hour delay between the mailing[ ] and the service of the warrant cannot be said to be "unreasonable" within the meaning of the Fourth Amendment.*

*Van Leeuwen,* 397 U.S. at 253, 90 S.Ct. at 1032–33 (emphasis added); *see Place,* 462 U.S. at 705 n. 6, 103 S.Ct. at 2643 n. 6 (*Van Leeuwen* "[e]xpressly limit[ed] its holding to the facts of the case"); *see also Anderson,* 663 F.2d at 938 (interpreting *Van Leeuwen* as providing that "[t]he legality of the continuing detention of [validily seized] luggage depends on whether such detention is reasonable, *in light of all the surrounding circumstances* " (emphasis added); *United States v. Martell,* 654 F.2d 1356, 1360 (9th Cir.1981) (holding that *Van Leeuwen* did not place "an outer time limit on the detention of impersonal objects"), *cert. denied,* 463 U.S. 1213, 103 S.Ct. 3551, 77 L.Ed.2d 1397 (1983). Thus *Van Leeuwen* compels us to review each case to determine whether the delay was unreasonable in light of all the facts and circumstances confronting the government. By creating a rigid outer limit for determining whether a delay is reasonable, the majority has failed to address the totality of the circumstances that caused the delay, contrary to the instruction of the Supreme Court in *Van Leeuwen.*

In light of the totality of the circumstances faced by the task force officers in this case, I would hold that the delay in obtaining the search warrants was reasonable. The evidence shows legitimate and practical reasons for the delay in processing the flood of warrants to search the suspicious packages seized pursuant to the profile. Indeed, the 16 to 23 day delay which occurred in this case would be reasonable even if *Van Leeuwen* had established an "outer boundary" at 29 hours. In *Van Leeuwen,* the Supreme Court found that a 29–hour delay in obtaining *one* search warrant was reasonable. Here, the government was able to process *441* search warrants in only 23 days (or 552 hours)—a rate of one warrant every 75 minutes! The officers' remarkable achievement in processing this number of warrants under extraordinary circumstances in a valiant effort to comply with the fourth amendment should be commended—not rewarded with suppression of the evidence.