896 F.2d 554
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leonard James HEARN (89-5446), Vincent Wayne Conner
(89-5447), Richard Maurice Lanxter (89-5449),
James Price, also known as J (89-5450),
and Patricia Ann Chisolm
(89-5451),
Defendants-
Appellees.
 Nos. 89-5446, 89-5447, 89-5449, 89-5450 and 89-5451.
 United States Court of Appeals, Sixth Circuit.
 Feb. 26, 1990.
 
 Before BOYCE F. MARTIN, Jr., and WELLFORD, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Defendants appeal their jury convictions and sentences for conspiracy to possess cocaine and heroin with the intent to distribute, distribution of cocaine and heroin, and aiding and abetting the use of a business for conducting illegal activity.
 
 
 2
 In September 1987, defendants Leonard Hearn and Wayne Conner began distributing cocaine and heroin in the Knoxville, Tennessee area. Hearn and Conner were joined in their distribution scheme by defendant Patricia Chisolm.
 
 
 3
 In early September 1987, Larry Leco Beverly, who was under the age of 21, was solicited by Hearn and Conner to deliver cocaine and heroin and he began doing so in the fall of 1987. The cocaine and heroin which he distributed came from Hearn, Conner, and Chisolm.
 
 
 4
 The testimony established that in the fall of 1987, Conner travelled from Knoxville to California with Beverly and defendant Maurice Lanxter to obtain large quantities of cocaine for distribution in Knoxville. The conspiracy also established bogus companies, the Price Insurance Agency and Leco Shoes, named for Beverly's middle name, to receive United Parcel Service and Federal Express shipments of cocaine and heroin from Washington, D.C. and California. The two companies were essentially two post office boxes rented by Hearn and Ernest Price in the Mail Store and More, a private mailing business in Knoxville.
 
 
 5
 In January 1988, James Price, Patricia Chisolm's brother moved into the residence shared by Chisolm and Hearn, and began to accompany Beverly during his heroin and cocaine distribution activities. Eventually, Price began to deliver heroin and cocaine for Hearn's organization.
 
 
 6
 On March 8, 1988, under the direction of Hearn and Conner, Beverly obtained 1.6 grams of heroin from a refrigerator in Conner's apartment. Beverly later distributed this heroin to an undercover agent. On March 16, 1988, Price accompanied Beverly on a sale of 2.32 grams of heroin to the same undercover agent in Knoxville, Tennessee. Price accompanied Beverly so that Price would later recognize the customer for future dealings. This sale was confirmed at trial by both the undercover officer who purchased the heroin, a surveillance agent, and a video tape of the transaction.
 
 
 7
 In April 1988, Beverly was contacted in California by Hearn who instructed him to wait for a call from Conner. Conner contacted Beverly, and they met at a Los Angeles hotel prior to participating in a narcotics transaction. At this transaction, Conner paid an individual for a box containing a kilogram of cocaine. After receiving this box, Conner and Beverly sent the package to Knoxville from a Federal Express office at the Los Angeles Airport.
 
 
 8
 On July 29, 1988, another package was sent by "Rome Connors" from the Federal Express office at the Los Angeles Airport to the Price Insurance Agency's address at the Mail and More Store in Knoxville. This package was sent overnight express and was wrapped with tape. A Federal Express employee in the Los Angeles office became suspicious of the package and notified her supervisor. The package was "blue-bagged", i.e., marked, for security inspection. When the package arrived in Memphis, Tennessee, the central processing hub for Federal Express, a Federal Express security officer opened the exterior of the package and found a plastic and tape wrapped package containing a crystalline powder resembling pepper. The security officer did not open the package further and placed it in an office safe.
 
 
 9
 On July 30, 1988, another Federal Express employee took the package to the Shelby County, Tennessee's Sheriff's Department. "Ty", a narcotics-trained dog utilized by the Shelby County Sheriff's Department, reacted positively to the package. The officers then opened the package further, finding a white powder which tested positive for cocaine. The package was turned over to agents in the Memphis DEA office on August 1, 1988, and was driven to the Knoxville DEA office on August 2, 1988.
 
 
 10
 Agent Persinger, the Resident Agent in charge of the Knoxville DEA office, after being advised of the incoming contraband, conducted an investigation regarding the addressee of the package, the Price Agency, and found evidence linking that addressee to heroin and cocaine trafficking in the Knoxville area. Persinger then consulted with the United States Attorney and applied for a search warrant based on his affidavit. That affidavit included information obtained during his investigation in Knoxville, but omitted any information about the earlier search of the package at Federal Express. After obtaining the warrant, on August 3, 1988, Persinger conducted a controlled delivery of the package to Lanxter, who was accompanied by Hearn, Conner and Chisolm. These four defendants were arrested shortly thereafter.
 
 
 11
 On November 9, 1988, Hearn, Price, Lanxter, Conner, and Chisolm were charged in an eight count superceding indictment in the Eastern District of Tennessee. Count one charged all five defendants with conspiring to distribute cocaine and heroin and conspiring to possess cocaine and heroin with the intent to distribute in violation of 21 U.S.C. Sec. 846. Count two charged Hearn with engaging in a continuing criminal enterprise in violation of 21 U.S.C. Sec. 848. Count three charged Hearn, Conner, and Lanxter with aiding and abetting each other in the unlawful distribution of five hundred grams or more of cocaine in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. Count four charged Hearn and Chisolm with aiding and abetting each other in the unlawful distribution of five hundred grams or more of cocaine in violation of 21 U.S.C. Sec. 841 and 18 U.S.C. Sec. 2. Count five charged Hearn and Conner with being persons over the age of eighteen who aided and abetted one another in the unlawful distribution of heroin to Larry Beverly, who was a person under twenty-one years of age, in violation of 21 U.S.C. Secs. 841(a)(1) and 845. Count six charged Hearn, Conner and Price with being persons over the age of eighteen who aided and abetted one another in the unlawful distribution of heroin to Larry Beverly, who was a person under twenty-one years of age, in violation of 21 U.S.C. Secs. 841(a)(1) and 845. Count six was later dismissed as to Conner and Price pursuant to a joint motion by the United States and the defendants. Count seven charged Hearn, Conner, Lanxter and Chisolm with aiding and abetting each other in the unlawful attempt to possess five hundred grams or more of cocaine with the intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1), 21 U.S.C. Sec. 846, and 18 U.S.C. Sec. 2. Count eight charged Hearn, Conner, Lanxter, and Chisolm with using facilities in interstate commerce to carry on a business enterprise involving narcotics in violation of 18 U.S.C. Secs. 2 and 1952(a)(3).
 
 
 12
 The defendants were tried in the Eastern District of Tennessee before a jury from January 9 through January 20, 1989. On January 20, 1989, the jury returned a verdict finding Hearn guilty on all counts. Conner was found guilty on counts one, three, five, seven, and eight. Lanxter was found guilty on counts one, three, seven and eight. Chisolm was found guilty on counts one, four, seven and eight. Price was found guilty on count one.
 
 
 13
 On March 23, 1989, the district court sentenced Heard to 235 months in prison for his convictions on counts two through seven. He was not sentenced for his conviction on count one because of his conviction on count two. He received a five-year sentence for his count eight conviction, to run concurrently with his other sentences. He also received an eight-year term of supervised release following his terms of imprisonment.
 
 
 14
 Conner was sentenced to 210 months in prison for his convictions on counts one, three, five, and seven. He received a five-year sentence for his count eight conviction, to run concurrently with his other sentences. He also received an eight-year term of supervised release following his terms of imprisonment.
 
 
 15
 Lanxter was sentenced to 164 months in prison for his convictions on counts one, three and seven, to be served concurrently. He received a five-year sentence for his count eight conviction, to run concurrently with his other sentences. He also received a five-year term of supervised release following his terms of imprisonment.
 
 
 16
 Chisolm was sentenced to a term of 121 months in prison for her convictions on counts one, four, and seven, to be served concurrently. She also received a five-year sentence for her count eight conviction, to run concurrently with her other sentences. She also received a four-year term of supervised release following his terms of imprisonment. Price received a 72-month sentence for his conviction on count one to be followed by a five-year term of supervised release.
 
 
 17
 Each of the defendants challenges the Shelby County Sheriff's Department's search of the package shipped by Federal Express from "Rome Connors" in Los Angeles to the Price Agency in Knoxville. The defendants contend that because the search of that package by the Sheriff's Department was conducted without a warrant, the cocaine evidence revealed in that search must be suppressed under the exclusionary rule for fourth amendment violations.
 
 
 18
 We first note that only defendant Wayne Conner has standing to challenge the search of the package. Wayne Conner was often referred to as "Rome" and the return address utilized by "Rome Connors" on the package matches the address on Conner's California driver's license. Only Conner, as the addressor of the package had any reasonable expectation of privacy in the contents of a package mailed to the Mail Store and More box assigned to the Price Agency. While there is testimony that Hearn and an unindicted individual, Ernest "Pops" Price, established the Price Agency, the record demonstrates that only Price's signature appears on the Mail Store and More box application card. The fact that Hearn and other defendants often picked up mail addressed to the Price Agency does not give them a reasonable expectation of privacy in material addressed to the Price Agency.
 
 
 19
 We also note that the search made by the Federal Express employee is a private search and does not violate the fourth amendment. United States v. Jacobsen, 466 U.S. 109 (1984); United States v. Barry, 673 F.2d 912, cert. denied, 459 U.S. 927 (1982). The Federal Express employees were entitled to inform law enforcement authorities of their suspicions regarding the package and the law enforcement authorities were entitled to examine the package to the same extent revealed by the private search without violating the fourth amendment. Jacobsen, 466 U.S. at 109 (1984). The use of a narcotics-trained dog to determine whether a package contains drugs does not violate the fourth amendment and a positive reaction by the dog gives officers probable cause to seize the package. United States v. Place, 462 U.S. 696 (1983); United States v. Dass, 849 F.2d 414, 415-416 (9th Cir.1988); United States v. Quinn, 815 F.2d 153, 159 (1st Cir.1987).
 
 
 20
 However, we do not read Place to allow a seized package to be opened absent exigent circumstances or a warrant. Therefore, we will assume that the fourth amendment was violated when the Shelby County Sheriff's Department opened the smaller package containing the cocaine which was found inside the outer package opened by the Federal Express employee. In a recent decision by the United States Supreme Court, Murray v. United States, 487 U.S. 533, 101 L.Ed.2d 472 (1988), the Court held that in situations involving a prior illegal search and a later search of the same object or place:
 
 
 21
 So long as a later, lawful search is genuinely independent of an earlier, tainted one (which may well be difficult to establish where the seized goods are kept in the police's possession) there is no reason why the independent source doctrine should not apply.
 
 
 22
 The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here.
 
 
 23
 Id. at ----, 101 L.Ed.2d at 483.
 
 
 24
 We turn now to whether the information transferred by the Memphis DEA office to Agent Persinger in Knoxville, who obtained a warrant for a search of the package after receiving such information, was genuinely independent of the tainted search. The independent source doctrine has been described as:
 
 
 25
 the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position than they would have been in if no police error or misconduct had occurred.... When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation.
 
 
 26
 Nix v. Williams, 467 U.S. 431, 443 (1984) (footnote omitted) (citations omitted). The test for the independent source doctrine announced in Murray requires us to ask:
 
 
 27
 whether it [the warrant] would have been sought even if what actually happened had not occurred--not whether it would have been sought if something else had happened. That is to say, what counts is whether the actual illegal search had any effect in producing the warrant, not whether some hypothetical illegal search would have aborted the warrant.
 
 
 28
 Murray, 487 U.S. at ----, 101 L.Ed.2d at 483 n. 3.
 
 
 29
 Applying this test, we note that if the Federal Express employee had first gone to the DEA with the suspicious package, and the DEA had obtained a warrant based only on the probable cause provided by the Federal Express employee's search, the subsequent search would have been valid. Clearly, a warrant would have been sought by the DEA if the illegal search had not been made. Moreover, it is clear that the law enforcement personnel in Knoxville were investigating a heroin and cocaine ring. Agent Persinger's investigation was sufficient to provide probable cause to issue a warrant to search the package a second time. We find that under Murray, this warrant was genuinely independent of the illegal search by the Shelby County Sheriff's Department, thus the cocaine evidence was properly admissible and the motion to suppress was properly denied.
 
 
 30
 We must also consider whether the warrantless police custody of the package from July 30, 1988 through August 2, 1988 constituted an unreasonable detention. In United States v. Van Leeuwen, 397 U.S. 249, 252-253 (1970), the Supreme Court held that a 29-hour detention of packages containing contraband coins was reasonable because the detention was based on a reasonable suspicion that the packages contained contraband and further time was needed to establish probable cause to support a search warrant. Although Van Leeuwen dealt with a detention based on reasonable suspicion, in Segura v. United States, 468 U.S. 796, 812 (1984), the Court stated that "a seizure reasonable at its inception because based on probable cause may become unreasonable as a result of its duration...." In Segura, the Court declined to hold that the police's 19-hour occupation of a New York City apartment to prevent destruction of evidence while they awaited a warrant was an unreasonable seizure because of lack of any evidence of the officers' bad faith and because of the common difficulties in obtaining a search warrant in a large metropolitan city.
 
 
 31
 The Court noted that their holding did not conflict with their decision in United States v. Place, supra, where a 90-minute airport detention based on reasonable suspicion was unreasonable, but a three-day warrantless detention of the defendant's unopened luggage after probable cause was established was not suggested as being unreasonable or a ground for suppression of evidence. Segura, 468 U.S. at 813 n. 8. In Place, the Court stated:
 
 
 32
 [T]he brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion. Moreover, in assessing the effect of the length of the detention, we take into account whether the police diligently pursue their investigation.
 
 
 33
 462 U.S. at 709. (emphasis supplied).
 
 
 34
 In United States v. Dass, the Ninth Circuit held that a probable cause-based detention of mailed evidence for periods of seven to twenty-three days violated the Van Leeuwen 29-hour bright-line test for reasonableness of delay. 849 F.2d 414, 414-415 (9th Cir.1988). We disagree that Van Leeuwen established a 29-hour outer limit for reasonableness. Accord United States v. Mayoni, 873 F.2d 1049, 1054 n. 6 (7th Cir.1989) (rejecting Dass ). Rather, as the Dass dissent and the Seventh Circuit have reasoned, a case by case determination of the reasonableness of a warrantless detention is consistent with Van Leeuwen, Place, and Segura. Mayoni, 873 F.2d at 1054; Dass, 849 F.2d at 418.
 
 
 35
 As previously stated, the detention in this case was based on the probable cause established when "Ty" reacted positively to the package. Because the events in this case occurred over a weekend, involved three separate law enforcement units, necessitated a lengthy drive of the package across the state of Tennessee, and time to set up a controlled delivery, the delays in obtaining a search warrant after probable cause was established on July 30 are not unreasonable. See United States v. Mayoni, 873 F.2d 1049, 1054 (7th Cir.1989) (two day detention over weekend based on reasonable suspicion was not unreasonable.). No suggestion has been made that the delay was due to any lack of diligence by the various police organizations involved in the detention. Likewise, no suggestion has been made that the length of the detention was based on bad faith. The district court properly denied Conner's motion to suppress the evidence.
 
 
 36
 Each of the defendants also challenges their convictions on the ground that the evidence produced at trial was insufficient as a matter of law to prove their guilt beyond a reasonable doubt. We reject these contentions, finding that a rational trier of fact could have found the essential elements of the charged crimes beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 37
 Defendant Lanxter challenges the district judge's refusal to grant his pretrial motion for severance. Lanxter claims that because he was not involved in each of the offenses charged in the indictment, that joinder for trial substantially prejudiced his defense to the point where he was not able to obtain a fair trial. Lanxter and the other defendants were charged with a conspiracy in count one of the indictment. Persons who are charged in a conspiracy should generally be tried together. United States v. Goble, 512 F.2d 458, 465-466 (6th Cir.), cert. denied, 423 U.S. 914 (1975). All co-conspirators need not be charged in every substantive count contained in an indictment. Schaffer v. United States, 362 U.S. 511, 513 (1960). Indeed, there is no requirement for every defendant ?? charged in every count of an indictment for there to be proper joinder. United States v. Barbosa, 666 F.2d 704, 707 (1st Cir.1981). Nor is it necessary for a co-conspirator to know of the full scope of the conspiracy so long as that co-conspirator knows the purpose of the conspiracy. Blumenthal v. United States, 332 U.S. 539 (1947). Lanxter was intimately involved in the workings of the conspiracy. The argument that the defendant would have a better chance for an acquittal in a separate trial has been rejected as a showing of sufficient prejudice to require the grant of severance. United States v. Thomas, 676 F.2d 239 (7th Cir.1980), cert. denied, 450 U.S. 931 (1981). Likewise, the fact that some evidence may be admissible against one defendant but not necessarily other codefendants or co-conspirators does not alone require the grant of a motion to sever. United States v. Hoffa, 349 F.2d 20 (6th Cir.1965), aff'd, 385 U.S. 293 (1966). Consequently, we do not find that the denial of Lanxter's motion to sever sufficiently prejudiced his chances for acquittal.
 
 
 38
 We also reject defendant Price's contention that the district court improperly denied his counsel's motion to withdraw from representation. We find that no actual conflict of interest prevented Price's counsel from effectively cross-examining any witnesses in this case, nor did Price's counsel receive any information tainted by an actual conflict of interest.
 
 
 39
 Defendants Hearn and Conner contend that the district court improperly calculated the applicable offense levels which determine their sentencing guideline range. Specifically, they challenge the district court's finding of fact concerning the amount of drugs considered in calculating the base offense level under the sentencing guidelines. We find no error in the district court's determination of the offense levels for Hearn and Conner. Any error in determining the amount of drugs to be considered in calculating the base offense level is a factual finding considered under the clearly erroneous standard. United States v. Wilson, 878 F.2d 921 (6th Cir.1989). Under that standard of review, we find no error by the district court.
 
 
 40
 Defendants Lanxter and Chisolm appeal their sentences on the ground that their self-proclaimed minimal participation in the conspiracy justifies a downward departure from the applicable guideline range. The decision to make a downward departure from the range is discretionary with the district court. Moreover, the determination of the degree of participation in the activity for which a defendant has been convicted is a factual determination subject to review under the clearly erroneous standard. United States v. Wright, 873 F.2d 437, 444 (1st Cir.1989); United States v. Franco-Torres, 869 F.2d 797, 800-801 (5th Cir.1989); see Wilson, 878 F.2d 921 (6th Cir.1989). There is sufficient evidence in this record of the participation of both Lanxter and Chisolm in a variety of the conspiracy's activities. Consequently, we do not find the district court's decision to not engage in a downward departure from the guidelines in sentencing Chisolm and Lanxter to be clearly erroneous.
 
 
 41
 The judgments of the district court are affirmed.