UNITED STATES of America,
Plaintiff-Appellee,

v.

Bruce John BAKER,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

John Stephen BRYAN,
Defendant-Appellant.

Nos. 77–1134, 77–1509.

United States Court of Appeals,
Ninth Circuit.

Jan. 19, 1978.

Rehearings and Rehearings En Banc
Denied March 6, 1978.

N. Rommel Bondoc (argued), San Francisco, Cal., for defendants-appellants.

Mark L. Webb, Asst. U. S. Atty. (argued), San Francisco, Cal., for appellee.

Before BARNES and TRASK, Circuit Judges, and BURNS,* District Judge.

TRASK, Circuit Judge:

This is an appeal by Bruce John Baker and John Stephen Bryan from a judgment of conviction for possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1) and conspiracy to distribute cocaine, 21 U.S.C. § 846.

By this consolidated appeal the appellants put in question the validity of their arrest and the search of the trunk compartment of Bryan's automobile, both without a warrant, and the legality of the search of a locked footlocker in the same car pursuant to a warrant. We consider those issues properly raised, but agree with the district court that they are without merit and therefore affirm.

Both appellants filed motions to suppress which were denied, whereupon they waived jury trial and were found guilty by the court. From the district court's written opinion on the motion to suppress evidence we find that on August 17, 1976, federal agent Henley and state agent Bergman met in an undercover capacity with co-conspirators Wardley and O'Donnell at the Winery Restaurant in Foster City, California. O'Donnell sold Henley 27 grams of cocaine from a blue canvas flight bag, and informed him that he could sell him an additional four pounds which were in the possession of a "Debbie" from Palo Alto, California. After further negotiations and a telephone call, it was agreed that Debbie, the resident of the house where the cocaine was located, and the source of supply, would transport the cocaine to Foster City, and that O'Donnell would deliver it to the officers one-half pound at a time, cash on delivery.

At 7:10 p. m., O'Donnell left the restaurant to meet Debbie. Federal agent Wilson observed O'Donnell and two persons, later identified as co-conspirators "Debbie" Sears and appellant Baker, appear from behind the Winery, walk into the parking lot, and enter O'Donnell's 1969 Chevrolet. Baker soon left the Chevrolet, and returned to the area behind the restaurant. He reappeared a few minutes later, and placed a blue canvas flight bag in the trunk of the Chevrolet. At 7:45 p. m., a 1969 Buick, driven by appellant Bryan, appeared from the direction from which Baker had come with the flight bag, and parked next to the Chevrolet. Baker and Sears then entered the Buick.

O'Donnell next led agent Henley to the trunk of the Chevrolet, opened the flight bag, and showed him the one-half pound of cocaine. Henley arrested O'Donnell. Shortly thereafter, state and federal officers arrested Sears, Baker, Bryan, and Wardley. Agents removed the car keys from the ignition of the Buick, and opened its trunk.[1] The trunk contained a briefcase and a metal footlocker. Agent Bergman opened the briefcase, and found a large amount of money. Pursuant to a booking search at the police station, officers discovered that all the defendants except Wardley were in possession of pre-recorded money used earlier that day to purchase the co-

---

* Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation.

1. During the time between trial and the exhibits were forwarded to this court, Government Exhibit No. 1 was apparently lost. This exhibit showed the relative positions of the vehicles involved in the case. So that the record on appeal would be complete, appellants submitted a sketch that had been made from the original. Appellants' motion to include the sketch as a substitute for Exhibit No. 1 is granted.

caine from O'Donnell. The next day, after a search warrant was obtained, the agents opened the footlocker and found that it contained 1,307.8 grams of cocaine.

■ Initially, we find there was probable cause to arrest both Bryan and Baker. In *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), the Court said:

"Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. *Brinegar v. United States*, 338 U.S. 160, 175–176 [69 S.Ct. 1302, 1310–1311, 93 S.Ct. 1879]; *Henry v. United States*, 361 U.S. 98, 102 [80 S.Ct. 168, 4 L.Ed.2d 134.] 'The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating . . . often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.' *Brinegar v. United States, supra*, [338 U.S.] at 176 [69 S.Ct. 1302]."

Here, both Baker and Bryan were inextricably enmeshed with the other defendants in the sale and delivery of the contraband. In addition, the officers had information from agent Henley and officer Bergman of a consummated sale of 27.31 grams of cocaine from a blue canvas flight bag that figured prominently in all transactions as a carrier for the cocaine being bartered and sold. The two appellants were clearly not innocent observers, but participants in the venture. The arrest was upon probable cause.

■ Turning to the automobile, we are mindful that the cocaine was at a distance from the point of delivery and had to be transported from Palo Alto, California to Foster City, California. The use of an automobile was necessary. When the Buick arrived, it was driven by Bryan and parked next to a Chevrolet which had the flight bag and one-half pound of cocaine in its trunk. Immediately after the arrest of Bryan and Baker, the agents immobilized the Buick by taking its keys. It was when the trunk of the Buick was opened that there was found a briefcase containing money and the locked metal footlocker. Clearly there was probable cause to believe the Buick was a part of the operation and might well contain other portions of the supply of cocaine.

■ Exigent circumstances to seize the vehicle also existed. It was then about 8:00 o'clock in the evening. To obtain a search warrant might require a considerable amount of time. *Chambers v. Maroney*, 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Notice had been taken of a green van that had been circling the parking lot. The officers suspected that it contained accomplices. *United States v. Valenzuela*, 546 F.2d 273 (9th Cir. 1976). There was the real possibility that the Buick might be taken away with or without guards having been posted. The vehicle was therefore taken to the Foster City Police Department for impoundment and safekeeping. On the following day the officers obtained a search warrant for the footlocker, opened it and found three pounds of cocaine which formed the basis for the possession charge.

This case is not controlled by *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). There a locked footlocker was found in possession of two train passengers under circumstances leading train personnel and investigating federal narcotics agents to believe the luggage contained contraband. This belief was bolstered by the positive reaction of a dog trained to detect marijuana. The passengers to whom the footlocker was shipped were arrested and taken, with the footlocker, to the Federal Building where a search of the footlocker was conducted and marijuana was found. No warrant for the search had been sought or obtained, nor

was there any risk of loss of the footlocker or its contents in taking the time necessary to obtain a search warrant. The Court held that the *Chambers v. Maroney* line of cases did not apply.

"The factors which diminish the privacy aspects of an automobile do not apply to respondents' footlocker. Luggage contents are not open to public view, except as a condition to a border entry or common carrier travel; nor is luggage subject to regular inspections and official scrutiny on a continuing basis. Unlike an automobile, whose primary function is transportation, luggage is intended as a repository of personal effects. In sum, a person's expectations of privacy in personal luggage are substantially greater than in an automobile.

"Nor does the footlocker's mobility justify dispensing with the added protections of the Warrant Clause. Once the federal agents had seized it at the railroad station and had safely transferred it to the Boston federal building under their exclusive control, there was not the slightest danger that the footlocker or its contents could have been removed before a valid search warrant could be obtained. The initial seizure and detention of the footlocker, the validity of which respondents do not contest, were sufficient to guard against any risk that evidence might be lost. With the footlocker safely immobilized, it was unreasonable to undertake the additional and greater intrusion of a search without a warrant." *United States v. Chadwick*, 433 U.S. at 13, 97 S.Ct. at 2484 (1977). (Footnote omitted).

In the case now before the court, a search warrant was obtained for the footlocker and it was opened pursuant thereto. In it was a quantity of cocaine. The appellants are thus driven back to their final contention, which is that the warrant was defective because the affidavit which supported its issuance was insufficient.

The standards for reviewing the sufficiency of a search warrant affidavit in this case are stated in *United States v. Lucarz*, 430 F.2d 1051, 1055 (9 Cir. 1970), as follows:

We come then to determine whether the allegations of the first nine paragraphs of the affidavit gave the magistrate probable cause to believe the stolen registry envelopes were at defendant's residence. We do so mindful that affidavits are to be interpreted in a common sense and realistic manner, *United States v. Ventresca*, 380 U.S. 102, 108–109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), and that probable cause exists when the facts and circumstances shown in the affidavit would warrant a man of reasonable caution in the belief that the items to be seized were in the stated place, *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

The affidavit here states among other things that agent Henley paid O'Donnell $1,700 in pre-recorded DEA money for one ounce of cocaine and that a booking search of Baker and Bryan revealed that they were in possession of some of that money.[2]

We have examined the affidavit with some care and are convinced that the search warrant was issued pursuant to lawful authority. All of the contested issues were resolved in favor of the government by the district judge and we agree with those dispositions.

The judgment is AFFIRMED.

---

**2.** Since the money found in the briefcase in the trunk of the Buick was not introduced in evidence, we need express no opinion on the validity of the action of the officers in opening it. Moreover, this aspect was not assigned as error by either appellant.