UNITED STATES of America

v.

William PENA, Defendant.

No. 98–CR–0006A.

United States District Court,
W.D. New York.

Jan. 7, 1999.

368

Marianne Mariano, Federal Public Defender Office, Buffalo, NY, for William Pena.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1), on January 29, 1998. On April 8, 1998, defendant filed a motion to suppress evidence. On November 5, 1998, Magistrate Judge Heckman filed a Report and Recommendation, recommending that defendant's motion to suppress be denied in its entirety.

This Court, having carefully reviewed Magistrate Judge Heckman's Recommendation, and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, defendant's motion to suppress evidence is denied.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

Defendant William Pena moves to suppress the evidence in this case arguing that it was seized in violation of his Fourth Amendment rights under the United States Constitution (Item 19). Specifically, defendant maintains that his arrest was unlawful because it was not supported by probable cause.

## BACKGROUND

A suppression hearing was held in this case on August 12, 1998. The Government presented one witness, FBI Special Agent James Orchard. Additional briefs were submitted by counsel after oral argument (Items 27, 30).

The suppression hearing testimony established the following facts. The defendant was arrested on January 13, 1998. Prior to the arrest, the FBI had been targeting an individual named Danny Rodriguez as a supplier of cocaine and crack cocaine. A consensually recorded telephone call was placed to Rodriguez by a cooperating witness in August of 1997. Another call occurred on December 5, 1997. On December 12, 1997. the FBI, through its cooperating witness, obtained powdered cocaine from Danny Rodriguez. On January 7, 1998, the cooperating witness again called Danny Rodriguez in an effort to purchase crack cocaine. Eventually, a buy was arranged for January 13, 1998. The prearranged location for the purchase was at the UniMart on Military Road in Buffalo, New York, across the street from the Salvation Army. The cooperating witness was expecting to purchase an "8-ball" of crack cocaine for the agreed price of $2,900.

Several telephone conversations took place between the cooperating witness and Danny Rodriguez, on the morning of January 13, in which Rodriguez agreed to attempt to locate drugs for the cooperating witness. Surveillance units followed Rodriguez from his home at 325 School Road in the Town of Tonawanda to 220 Jersey in the City of Buffalo. He walked up to the house, and then he returned to his car and drove to 356 Connecticut Street. He appeared to be attempting to wake someone at 356 Connecticut Street by yelling up at the windows. Rodriguez eventually returned to his vehicle and went a few blocks away to his parents' house.

At this point, the cooperating witness contacted Rodriguez, and Rodriguez stated that he was still in the process of trying to wake up his supplier and he would call him back as soon as he heard something. Rodriguez eventually returned to the Connecticut Street address after advising the cooperating witness that he was on his way to pick up the crack cocaine. Upon his return, the agents noticed an unoccupied maroon vehicle parked in the back driveway of 356 Connecticut Street. When Rodriguez arrived at the Connecticut Street address, he entered the back side of the address, then returned a short time later. Rodriguez was driving a gray Mustang.

When Rodriguez came out of the Connecticut Street address, he went to his vehicle, retrieved something, and then returned inside. He then returned to his vehicle and proceeded to leave. At the same time, the maroon vehicle backed out of the back alleyway and started to follow Rodriguez's Mustang. The maroon vehicle had two male occupants. The maroon vehicle followed directly behind Rodriguez's Mustang all the way to the UniMart location. Rodriguez called the confidential informant during the trip and advised him that he was on his way. He also indicated that he had the drugs.

When the cars arrived at the UniMart, the maroon vehicle parked in front of the UniMart, and Rodriguez parked directly to the right of the maroon vehicle. Rodriguez got out of his car and into the rear seat of the maroon vehicle. They appeared to have a conversation. Rodriguez then exited the vehicle. The driver of the maroon vehicle did the same. Both individuals then stood in front of the UniMart and had a brief conversation.

Both men then re-entered their respective vehicles. Rodriguez then pulled out. drove down one side street and made a U-turn with the maroon vehicle following. Both vehicles went across Military Road and into the Salvation Army parking lot. Once they were in the parking lot, Rodriguez got out of his vehicle and into the back of the maroon vehicle. They sat there for a brief time, apparently engaged in conversation. Rodriguez then got back in his vehicle and was about to pull away when the FBI arrested all three subjects in the parking lot.

A search of the maroon vehicle revealed 141.3 grams of crack cocaine in the driver's side door along with a weapon. Defendant Pena was the passenger in the maroon vehicle. Following his arrest, defendant Pena made some exculpatory statements in the car on the way to the FBI office in Buffalo. Specifically, he stated that the driver of the vehicle, Ricky, was going to drop him off at Columbus Hospital and that he knew nothing of this drug transaction. A search of Pena's person revealed a cellular phone. During booking, Pena was asked if the cellular phone was his, and he stated that it had been given to him by "Ricky." The defendant was subsequently advised of his rights and made additional statements.

On cross examination, Special Agent Orchard admitted that William Pena's name had not been mentioned in the investigation prior to his arrest, and that he was observed for the first time in the maroon vehicle when Danny Rodriguez left 356 Connecticut Street. Special Agent Orchard also testified that typically, when drug suppliers get involved in these types of quantities of drugs and this amount of cash, most of the time they will not send one person to deliver the drugs to the buyer. Normally, there will be at least two people, both for protection and to ensure that the actual supplier of the drugs gets his or her money from the seller negotiating the sale.

## DISCUSSION

The defendant argues that there was no probable cause to support his arrest and that at best, the circumstances in the case gave the police the basis to make a *Terry* stop. Defendant argues that once he was frisked, and no drugs or guns were found on his person, he should have been set free. The defendant also argues that evidence later taken from the defendant—statements and a pager—should be suppressed because they are the product of an illegal arrest. Each argument will be addressed in turn.

### A. Probable Cause to Arrest Defendant Pena.

Probable cause exists "where the facts and circumstances within the officer's knowledge and of which they have reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense

has been or is being committed." *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *see also Marshall v. Sullivan,* 105 F.3d 47, 54 (2d Cir.1996). Both sides agree that there must be "more than momentary, random, or apparently innocent association ... [with] criminal activity," in order to find probable cause. *United States v. Meade,* 110 F.3d 190 (1st Cir.1997). Both sides also cite the First Circuit case of the *United States v. Martinez–Molina,* 64 F.3d 719, 726–27 (1st Cir.1995). There, the court stated:

> [P]robable cause must exist with respect to each person arrested, and "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (citing *Sibron v. New York,* 392 U.S. 40, 62–63, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)). Rather, "some additional circumstances from which it is reasonable to infer participation in criminal enterprise must be shown." *United States v. Burrell,* 963 F.2d 976, 986 (7th Cir.1992).
>
> In assessing the significance of a defendant's association to others independently suspected of criminal activity, the *Hillison* court looked to whether the known criminal activity was contemporaneous with the association and whether the circumstances suggest that the criminal activity could have been carried on without the knowledge of all persons present. *United States v. Hillison,* 733 F.2d 692, 697 (9th Cir.1984). Other courts have focused on the nature of the place in which the arrest occurred and whether the individual himself was behaving suspiciously or was merely tainted by another. *United States v. Tehrani,* 49 F.3d 54, 59 (2d Cir.1995).

The *Martinez–Molina* panel also noted that officers in the field are not required to "ignore the fact that 'criminals rarely welcome innocent persons as witnesses to serious crimes and rarely seek to perpetuate felonies before larger-than-necessary audiences.'" 64 F.3d at 729.

■■■ Although this is a close case, I find that there was probable cause to arrest both occupants in the maroon vehicle, along with Danny Rodriguez. The probable cause as to Danny Rodriguez is clear and uncontested. He had been implicated through a reliable informant with the drug sales and had been recorded that very day promising to supply an 8–ball of cocaine. After the two vehicles left Connecticut Street, Danny Rodriguez called the cooperating witness, advising the witness that he had the drugs and was on his way.

The activities of the occupants in the maroon vehicle clearly tied them to those of Danny Rodriguez. The maroon vehicle closely followed Rodriguez from Connecticut Street to the UniMart Convenience Store. The vehicles parked side-by-side. There, Danny Rodriguez entered the maroon vehicle. He and the other driver exited and spoke outside their cars. Both vehicles then went down the street, did u-turns, and drove to the Salvation Army parking lot across the street. Again, Rodriguez entered the maroon vehicle and then returned to his vehicle. Pena was present in the passenger seat throughout the drive from Connecticut Street to the UniMart, during the two meetings with Rodriguez in the car, and during the time that the car left the UniMart, went down the street and did a U-turn, and returned to the Salvation Army parking lot.

Accordingly, I find that the defendant was more than an innocent bystander and that there was more than a momentary, random, or innocent association with the other individuals involved in the drug transaction. The close association of the two vehicles during these stops clearly connects the maroon vehicle with the drug transaction. It was reasonable for the agents to assume that both occupants of the maroon vehicle were aware of and part of the drug transaction, either by providing protection to Danny Rodriguez or by

making sure they received payment from Rodriguez for the drugs supplied by them.

■ Although the facts do not conclusively rule out the innocent bystander explanation for the passenger of the maroon vehicle, the facts sufficiently satisfy the lesser standard of probable cause. Facts must been seen and weighed "not in terms of library analysis by scholars, but as understood by those first in the field of law enforcement." *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (quoting *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). As noted in *Martinez–Molina,* there is no reason to invite Pena along to witness a serious crime. *See* 64 F.3d at 729. Furthermore, had he wished to disassociate himself from the driver of the vehicle or from Danny Rodriguez, he would have had several opportunities to exit the vehicle at the UniMart or at the Salvation Army location.

The case most closely in point is *United States v. Cowart,* 97–CR–00063 (W.D.N.Y. Feb. 12, 1998) (Report and Recommendation of Magistrate Judge Leslie G. Foschio). There, the court found probable cause to arrest a traveling companion (Curry) based on the totality of circumstances. A reliable informant who had received a marijuana package contacted co-defendant Cowart to notify him that the package was at her home and could be picked up. Cowart obtained a ride from defendant Curry to Watson's residence. Like this case, there had been no previous contact with Curry by the informant prior to Curry driving Cowart to the residence. The court upheld the arrest as based on probable cause, citing the DEA's reasonable belief that Curry was conspiring with Cowart to possess and distribute marijuana. Like this case, the arrest occurred before the delivery of the drugs.

The cases in which courts have found insufficient involvement to justify an arrest include *Ybarra v. Illinois,* 444 U.S. 85, 90–91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), in which the police officers had a warrant to search a bar and its bartender for heroin. The Supreme Court invalidated a search of a bar patron who made no suspicious movements or statements. The Court noted that the officers knew nothing more about Ybarra "except that he was present, along with several other customers, in a public tavern at a time when the police had reason to believe that the bartender would have heroin for sale." *Id.* at 91, 100 S.Ct. 338. Similarly, in *Sibron v. New York,* 392 U.S. 40, 62, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), the Supreme Court held that probable cause was not established by the fact that the defendant spoke to a number of narcotics addicts where the arresting officer had no information as to the content of the conversations and saw nothing pass between the defendant and the addicts.

On the other hand, cases in which courts found probable cause involve more than a momentary, random, or apparently innocent association. For example, in *United States v. Patrick,* 899 F.2d 169, 172 (2d Cir.1990), the panel upheld the search of a male defendant who crossed the boarder from Canada into New York at approximately the same time as a woman who was found to be carrying narcotics. No other travelers were present when the two simultaneously entered the Immigration office, and both told the same unusual story as to how they had accidentally crossed the boarder by bus and were simply returning to the United States. When drugs were found in the woman's purse, the man was also arrested. The panel stated:

> [T]he information they had about Patrick—that he entered the Immigration office with Taylor at a time when no others were present and they both had accidentally crossed into Canada—provided an adequate basis for the officers to reasonably believe that Patrick was not just a mere innocent traveling companion but was traveling *and* acting in concert with Taylor in transporting the cocaine.

*Id.; see also United States v. Halliman,* 923 F.2d 873, 881–82 (D.C.Cir.1991) (after search of hotel finding a substantial amount of cocaine, police properly arrested two men who entered the hotel lobby and headed for the rooms that had just been searched); *United States v. Hillison,* 733 F.2d 692, 697 (9th Cir.1984) (visiting in hotel with two men known to being engaged in narcotics trafficking as well as interchangeable use of automobiles constitutes probable cause to arrest the defendant based on a close association with drug traffickers); *United States v. Holder,* 990 F.2d 1327, 1329 (D.C.Cir.1993) (probable cause existed to arrest defendant at the scene of a narcotics transaction where drugs were openly on display); *Martinez–Molina,* 64 F.3d at 728–30 (defendants interaction with others who are present after a vehicle believed to contain drugs had left was sufficient to establish probable cause); *United States v. Meade,* 110 F.3d 190, 197 (1st Cir.1997) (observations of the defendant with other suspects believed to be part of an alleged scheme to rob an armored vehicle sufficient to establish probable cause).

For the reasons set forth above, I find that the close association between the maroon vehicle and Danny Rodriguez justified the arrest of both occupants.

### B. Evidence Seized from the Defendant Following his Arrest.

Because I find that the arrest was supported by probable cause, the statements and pager taken from the defendant following his arrest should not be suppressed.

■ Assuming, *arguendo,* that there was no probable cause to arrest the defendant, the statement taken from the defendant after he was read and waived his *Miranda* rights should not be suppressed. Evaluating the four factors set forth in *United States v. Ceballos,* 812 F.2d 42, 50 (2d Cir.1987), in determining whether the tainted stop has been sufficiently attenuated, two favor the government. The defen-

dant here was given *Miranda* warnings, and the illegal stop was neither a flagrant violation of the defendant's rights nor a purposeful exploitation of the arrest. Ricky Rodriguez had already advised the agents that the drugs were in the driver's side of the maroon vehicle, and that Pena had told him to follow the Mustang to deliver the drugs. The drugs and a weapon had been found in the car. Although the interview was held shortly after the arrest, and although no other intervening circumstances have been identified, I agree that the Supreme Court's decision in *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), supports a finding of attenuation.

■ As to the exculpatory statement made in the car, this was a spontaneous, voluntary statement, not made in response to police interrogation. *Rhode Island v. Innis,* 446 U.S. 291, 299–300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). This statement should not be suppressed.

■ As to the cellular phone, this was seized from the defendant during a routine booking procedure as a search incident to arrest. Pena's statement about the cellular phone was in response to the routine booking question of whether the cellular phone belonged to him. *See Pennsylvania v. Muniz,* 496 U.S. 582, 601–02, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990) (plurality opinion); 495 U.S. at 607, 110 S.Ct. 2105 (Rehnquist, C.J., concurring in part and dissenting in part). Accordingly, the cellular phone and the statement should not be suppressed.

### CONCLUSION

For the foregoing reasons, I recommend that defendant's motion to suppress (**Item 19–1**) be denied in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.

The district court will ordinarily refuse to consider on de novo review arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,* 840 F.2d 985 (1st Cir.1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and Report and Recommendation to the attorneys for the parties.

**SO ORDERED.**

November 4, 1999.