UNITED STATES of America, Plaintiff–Appellee–Cross–Appellant,

v.

Dwan Bernard GILL, Defendant–Appellant–Cross–Appellee.

Nos. 00–30296, 00–30318.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 18, 2001.

Filed Feb. 6, 2002.

---

**3.** While the *Buckland* en banc proceedings were pending, we deferred submission of this appeal.

Stephan R. Illa, Law Offices of Stephan R. Illa, Inc., Bainbridge Island, Washington, for the defendant-appellant-cross-appellee.

Demetra Lambros, United States Department of Justice, Washington, DC, for the plaintiff-appellee-cross-appellant.

Before: KLEINFELD and GOULD, Circuit Judges, and ROLL, District Judge.*

ROLL, District Judge.

Appellant Dwan Bernard Gill appeals from the district court's denial of his motion to suppress evidence seized pursuant to a search warrant and its imposition of consecutive sentences for conspiracy to distribute phencyclidine (PCP) and attempted possession of PCP with intent to distribute. The government cross-appeals the district court's ruling that drug quantity had to be proven beyond a reasonable doubt for sentencing guidelines purposes. For the reasons set forth below, the district court correctly denied the motion to suppress but this matter is remanded for resentencing.

## FACTUAL BACKGROUND

On Thursday, August 5, 1999, shortly before 6:00 p.m., Gill entered a post office near Los Angeles International Airport, carrying an eight inch square package. From the video monitor in his office, postal police officer Norbert Jaworowski noticed the size of the package and the excessive amount of tape used on it. When he went to the post office lobby for a closer look, he observed that Gill appeared nervous, turned sideways in an apparent attempt to avoid the visible surveillance cameras, and sent the package by express mail. When Gill left the post office, Officer Jaworowski followed him outside and obtained a license plate number from Gill's vehicle. Upon returning to the post office, Officer Jaworowski examined the package and observed that the names of both the sender and the recipient were misspelled. He

* The Honorable John M. Roll, United States District Judge for the District of Arizona, sitting by designation.

concluded that the names were aliases.[1] He also observed that the destination of the package was Kent, Washington, near Seattle.

Officer Jaworowski next ran a license plate number check, from which he learned that the vehicle was registered to Gill. He also requested a photo of Gill. From that inquiry, Officer Jaworowski confirmed that Gill was the sender of the package but learned that Gill's address was different from the return address on the package. A criminal history check of Gill revealed a firearms arrest and gang connections. Officer Jaworowski then contacted postal police officer Michael Erdahl in Seattle, Washington, secured the package, and mailed it to Officer Erdahl that same day.

The next day, Friday, August 6th, Officer Erdahl received the package and concluded that it met several profiling factors, including the use of excessive tape, the use of handwritten labels, the significant distance between the sender's address and the post office's address from which the package was mailed, the use of aliases, the size and shape of the package, and the fact that it was mailed from a "source" city for drugs.[2] He then called the telephone number listed by Gill as the sender's telephone number and learned that the telephone was no longer in service. Officer Erdahl then arranged for a drug dog to sniff the package for the presence of drugs. The dog did not alert. However, drug dogs are not trained to detect methamphetamine and PCP.[3] Accordingly, Officer Erdahl continued his investigation.

Officer Erdahl called the Kent post office and learned that the recipient's address had been vacant for several months. This was significant to Officer Erdahl, who had experienced instances in the past where packages had been sent to vacant houses and then picked up by the intended recipients. Officer Erdahl then drafted a search warrant for the package and faxed it to an Assistant United States Attorney (AUSA), who said he would read it over the weekend.

On Monday, August 9th, Officer Jaworowski informed Officer Erdahl that a "George Thomas" had called the post office to learn the whereabouts of the package. "Thomas" gave the post office a telephone number that was one digit different from the telephone number written on the package. When "Thomas's" telephone call was returned, it was discovered that the number had been disconnected.

Officer Erdahl then contacted Puget Sound Energy concerning the Kent, Washington address on the package and learned that Venita Tatum was the subscriber. A criminal history check of Tatum disclosed that she was being supervised by the Department of Corrections (DOC). The DOC informed Officer Erdahl that Tatum had prior narcotic-related convictions and gang affiliations.

On that same day, Officer Erdahl spoke with the AUSA, who urged the officer to continue his investigation. The AUSA suggested contacting the postal carrier who delivered mail to the addressee's residence. The postal carrier informed Officer Erdahl that he had seen a woman accessing the mailbox a few days earlier;

1. The package was addressed to "Siliva Thomas" and the return address listed the mailer as "Greoge Thomas."

2. On that same day, a search of prior express mail labels disclosed that previous packages

had been mailed from the same return address to an address in Kent, Washington.

3. Dogs are not trained to detect PCP or methamphetamine due to the risk these substances pose to the dogs.

the carrier's description of the woman was consistent with the description of Tatum in DOC and criminal history records.

The next day, Tuesday, August 10th, Officer Erdahl completed the search warrant application and affidavit. However, the magistrate judge was unavailable that day and did not authorize the search warrant until the following morning, Wednesday, August 11th.

Upon issuance of the search warrant, Officer Erdahl opened the package. Inside the package was an Ocean Spray glass bottle containing 25 ounces of a yellowish liquid, which fieldtested positive for PCP. Gill was arrested and a search warrant was obtained for his house, where officers discovered a one ounce vanilla extract bottle containing PCP residue and a syringe.

Officers then made a controlled delivery to Tatum, using a PCP-like substance in an Ocean Spray bottle and a tracking device. After the tracking device signaled that the package had been opened, officers, pursuant to an anticipatory search warrant, entered the Tatum residence. Tatum ran into the bathroom and broke the bottle in the sink. A search of her residence uncovered approximately 75 small empty vials and a syringe.

## PROCEDURAL BACKGROUND

Gill was charged in a superseding indictment with conspiracy to distribute 100 grams or more of PCP and attempted possession with intent to distribute 100 grams or more of PCP, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846. The superseding indictment mistakenly identified PCP as a Schedule III controlled substance.[4]

Gill filed a motion to suppress physical evidence, arguing that the initial detention of the package was not supported by reasonable suspicion and that the length of the detention was unreasonable. The motion to suppress was denied.

At trial, Tatum appeared as a government witness and testified that she had received other mailings from Gill in the past and had purchased a total of 103 ounces of PCP from him. Gill was convicted of both counts.

A post-trial hearing regarding the impact of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), was held. At the hearing, because the jury had not determined the quantity of drugs involved and because of the mistaken impression that PCP was a Schedule III controlled substance, the government stated that the district court was limited to a maximum sentence of five years per count, the lowest penalty provision for convictions of conspiracy to distribute and attempted possession for distribution of a Schedule III controlled substance.

At sentencing, the district court concluded that because drug quantity had not been submitted to the jury, in proving drug quantity as a guidelines factor, the government was required to establish quantity beyond a reasonable doubt. The district court concluded that only 25 ounces of PCP had been proven beyond a reasonable doubt and did not take into account the additional PCP mailings to which Tatum had testified. The district court determined that under the sentencing guidelines, the range for 25 ounces of PCP and a criminal history category I was 78–97 months imprisonment. The district court adopted the government's statement that PCP was a Schedule III controlled substance and that the statutory maximum penalty was five years. The district court

---

**4.** This misidentification became problematic at sentencing because the schedule of a controlled substance impacts the statutory maximum sentence.

imposed a 60–month sentence as to the conspiracy count and a consecutive 37–month sentence as to the attempted possession for distribution count, for a cumulative sentence at the high end of the guidelines.

## ISSUES ON APPEAL

On appeal, Gill argues that the search of the package violated the Fourth Amendment because a founded suspicion did not exist to justify the initial detention of the package and because too much time had elapsed between the initial detention and its subsequent search. Gill also argues that the district court erred in imposing consecutive sentences.

In its cross-appeal, the government argues that the district court erred when it considered only the quantity of PCP proven beyond a reasonable doubt rather than the quantity proven by a preponderance of the evidence.

## A. RULING ON MOTION TO SUPPRESS

This matter involves the detention of mail when it is suspected that a controlled substance is contained therein.

### 1. Standard of Review

■■■ A district court's decision to deny a motion to suppress evidence is reviewed de novo and the district court's factual findings are reviewed for clear error. *United States v. Murillo*, 255 F.3d 1169, 1174 (9th Cir.2001) (citation omitted). "A warrantless seizure and detention presents a mixed question of law and fact reviewed de novo." *United States v. Aldaz*, 921

F.2d 227, 229 (9th Cir.1990) (citation omitted), *cert. denied*, 501 U.S. 1207, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991).

### 2. Discussion

■■■ First-class mail, such as letters and sealed packages, is protected by the Fourth Amendment from unreasonable search and seizure. *United States v. Van Leeuwen*, 397 U.S. 249, 251, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). "Postal authorities may seize and detain packages if they have a reasonable and articulable suspicion of criminal activity." *Aldaz*, 921 F.2d at 229 (citations omitted). A reasonable suspicion "is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person [or object] detained is [involved] in criminal activity." *United States v. Lopez–Soto*, 205 F.3d 1101, 1105 (9th Cir.2000) (citations and internal quotations omitted).[5]

■■■ Gill contends that the detention of the package was not supported by a reasonable suspicion and therefore violated the Fourth Amendment. However, by the time Officer Jaworowski detained the package long enough to send it to Officer Erdahl in Seattle, a reasonable suspicion existed. The excessive wrapping of the package, the furtive movements of the mailer, the use of aliases as to the sender and addressee, and the fact that the sender resided at a different address than the return address all contributed to a reasonable suspicion for detention of the package.

Gill also argues that the length of time the package was detained before a search

---

**5.** The government did not make the argument which Judge Gould's concurring opinion lays out, that reasonable suspicion is not needed for an unintrusive detention such as took place here that does not significantly delay delivery. We therefore do not use that theory

as our *ratio decidendi*. Our analysis should not be understood as rejection of that theory, because we do not reject it, and do not rely on it only because it was not the theory urged in the briefs.

warrant was obtained was unreasonable. Gill contends that the fact that the package was sent by express mail is yet another reason why the length of the delay was unreasonable.

■ Here, the package was mailed on late Thursday afternoon and was opened pursuant to a search warrant on the following Wednesday morning. Although Gill maintains that this delay was particularly egregious because the package was sent by express mail, this Court has stated that "the main Fourth Amendment interest in a mailed package attaches to the privacy of its contents, not the speed with which it is delivered." *United States v. Hillison*, 733 F.2d 692, 696 (9th Cir.1984) (nine hour delay reasonable) (citation omitted). *See also Van Leeuwen*, 397 U.S. at 253, 90 S.Ct. 1029 (29 hour detention of packages sent by first class mail not unreasonable); *Aldaz*, 921 F.2d at 229–31 (five day delay not unreasonable).

Gill places great reliance on *United States v. Dass*, 849 F.2d 414, 414–15 (9th Cir.1988), where this Court ruled that delays ranging from 7 to 23 days were unreasonable. In *Dass*, suspicious packages at various Hawaii post offices were collected for dog sniffs and once the presence of marijuana was detected, the packages were detained until search warrants could be obtained. The district court suppressed the evidence, finding that "the delays could have been much shorter (36 hours) if the police had acted diligently." *Dass*, 849 F.2d at 415. This Court affirmed the district court.

This case bears little resemblance to *Dass*. Although Gill argues that the investigation was conducted at a "leisurely pace," it is difficult to objectively view this investigation as leisurely. The postal officers tracked down various leads, confirmed motor vehicle, utility, and criminal records, verified addresses and phone numbers, and contacted the postal worker who delivered mail to the address to which the package was being sent. One of the investigators testified that 1930 he believed that the regular postal employee charged with delivering the mail to the recipient's address did not work on Fridays and could not be contacted until Monday. Nor is it insignificant that the investigation began the end of one week and was completed at the beginning of the following week. The AUSA indicated that the search warrant application would be reviewed over the weekend and a magistrate judge was not available to issue the search warrant on Tuesday, August 10th.

Even with express mail, Gill's predominant interest was in the privacy of the package and not merely prompt delivery. On these facts, the delay was not unreasonable.

## B. SENTENCING RULINGS

At sentencing, the district court was faced with a guidelines range of 78–97 months imprisonment and what was represented by the parties to be two convictions carrying a statutory maximum punishment of five years each. The district court imposed a sentence of 60 months imprisonment for the conspiracy count and a 37–month consecutive term of imprisonment as to the attempted possession with intent to distribute count.

Gill argues that the district court erred in imposing consecutive sentences in this matter because the sentences exceeded the five year statutory maximum and were, therefore, in violation of *Apprendi*.

The government cross-appeals on the ground that the district court erroneously applied the wrong quantum of proof at sentencing in deciding the amount of PCP for which Gill is responsible. The government also seeks rectification of the incor-

rect statutory maximum applied by the district court.

### 1. Standard of Review

Whether the district court properly applied the correct burden of proof in determining the quantity of PCP and whether the district court properly applied *Apprendi* are questions of law, which are reviewed de novo. *California Ironworkers Field Pension Trust v. Loomis Sayles & Co.*, 259 F.3d 1036, 1042 (9th Cir.2001) (citation omitted).

### 2. Apprendi—Consecutive Sentences

■ In imposing sentences in this matter, the district court, at the urging of defense and government counsel, concluded that the statutory maximum for the offenses of conspiracy to distribute PCP and attempted possession of PCP with intent to distribute was five years imprisonment on each count. This determination was based on the incorrect assumption that PCP was a Schedule III controlled substance.[6]

■ All sides acknowledge on appeal that PCP is a Schedule II controlled substance. The indictment charged and the case was tried with the full understanding that the substance involved was PCP. That PCP was misidentified in the indictment as a Schedule III drug was not prejudicial to the defendant. *United States v. Greenwood*, 974 F.2d 1449, 1471–73 (5th Cir. 1992) (mischaracterization of methamphetamine as Schedule III drug harmless error); *United States v. Kaiser*, 599 F.2d

942, 943 (10th Cir.1979) (misidentification of amphetamine as Schedule III drug harmless error). Therefore, the correct statutory maximum for conspiracy to distribute PCP and for attempted possession of PCP with intent to distribute is 20 years imprisonment on each count. 21 U.S.C. § 841(b)(1)(C).

■ The district court applied the wrong statutory maximum to the offenses presented here. Using the twenty year statutory maximum, Gill's 97–month sentence falls within that maximum. Although the stacking of Gill's sentences was permissible, *United States v. Buckland*, No. 99–30285, 2002 WL 63718, at *8–*9 (9th Cir. Jan.18, 2002) (en banc), it was not necessary. Whatever *Apprendi* issue might otherwise have existed assuming a five year statutory maximum is not presented in this case.[7] However, because of the errors below, it is appropriate to remand this matter for resentencing consistent with the correct statutory maximum for PCP drug-trafficking offenses.

### 3. Burden of Proof

The government argues that the district judge applied the wrong standard of proof in determining drug quantity for guidelines purposes. As previously noted, the district court ruled that it would only consider the quantity of PCP proven beyond a reasonable doubt. Applying that standard, the district court found that only the intercepted bottle containing 25 grams of PCP sent by Gill and intended for Tatum

---

6. Although 21 U.S.C. § 812 provides that PCP is a Schedule III narcotic, the United States Attorney General, pursuant to 21 U.S.C. § 811(a), upgraded PCP to a Schedule II controlled substance. *See* 21 C.F.R. § 1308.12. Had Gill's offenses involved a Schedule III controlled substance, the statutory maximum would have been five years imprisonment per count. 21 U.S.C. § 841(b)(1)(D).

7. In *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

had been proven beyond a reasonable doubt. The government urges that this matter be remanded for resentencing and that on remand, the district court apply the preponderance of the evidence standard in deciding the quantity of PCP involved.

Post-*Apprendi* circuit court decisions uniformly hold that where the jury has not decided the quantity of drugs involved and the sentencing court must determine drug quantity for guidelines purposes, so long as the sentence imposed does not exceed the statutory maximum, the quantum of proof the judge should apply is a preponderance of the evidence. *See Buckland,* 277 F.3d at 1183–85. *See also United States v. Fields,* 251 F.3d 1041, 1043–44 (D.C.Cir.2001); *United States v. Jones,* 245 F.3d 645, 651 (7th Cir.2001); *United States v. Caba,* 241 F.3d 98, 101 (1st Cir. 2001); *United States v. White,* 240 F.3d 127, 136 (2nd Cir.2001); *United States v. Heckard,* 238 F.3d 1222, 1223–36 (10th Cir. 2001); *United States v. Lewis,* 236 F.3d 948, 950 (8th Cir.2001); *United States v. Williams,* 235 F.3d 858, 860–865 (3rd Cir. 2000), *cert. denied,* —— U.S. ——, 122 S.Ct. 49, 151 L.Ed.2d 19 (2001); *Unite States v. Kinter,* 235 F.3d 192, 198–201 (4th Cir.2000), *cert. denied,* 532 U.S. 937, 121 S.Ct. 1393, 149 L.Ed.2d 316 (2001); *United States v. Munoz,* 233 F.3d 410, 413–14 (6th Cir.2000); *United States v. Nealy,* 232 F.3d 825, 829 n. 3 (11th Cir. 2000), *cert. denied,* —— U.S. ——, 122 S.Ct. 552, 151 L.Ed.2d 428 (2001); *United States v. Doggett,* 230 F.3d 160, 164–66 (5th Cir.2000); *cert. denied,* 531 U.S. 1177, 121 S.Ct. 1152, 148 L.Ed.2d 1014 (2001).[8]

On remand, the district court should apply a preponderance of the evidence standard in determining the quantity of PCP for which Gill is responsible.

## CONCLUSION

The district court's rulings regarding the motion to suppress evidence are affirmed but this matter is remanded for resentencing consistent with this opinion.

**AFFIRMED IN PART, REMANDED IN PART.**

GOULD, Circuit Judge, concurring:

Our opinion applies the "reasonable and articulable suspicion of criminal activity" test in evaluating the postal authorities' detention of mail in this case. The government in briefing and in oral argument expressly accepted that the reasonable suspicion standard applied to the postal authorities' investigatory actions. Reasonable suspicion was shown, as the opinion explains. Nonetheless, the standard to be applied may have significance in other cases. I suggest that the reasonable suspicion standard is not required for postal authorities to detain mail where the detention is unintrusive and does not significantly delay delivery.

When people send mail, they reasonably expect that it will not be searched and that it will reach its intended destination in about the same time that it takes other mail. If a letter or parcel is singled out and inspected, but is still delivered when other mail would have been, then no "seizure" has taken place within the meaning of the Fourth Amendment to the United States Constitution. The same is true if

---

**8.** Although this Court has recognized that the burden of proof may change to clear and convincing evidence if the district court's determination of enhancements has an extremely disproportionate effect upon the sentence to be imposed, *see, e.g., United States v. Jor-* dan, 256 F.3d 922, 927–28 (9th Cir.2001), no such disproportionate effect is present here. The district court's determination that Gill is accountable for 103 grams of PCP would only result in a four level guidelines increase.

there is a minimal delay. And where, as here, a parcel is placed temporarily in a separate room, as opposed to being left with other mail, the privacy intrusion is *de minimis,* and is not a "seizure." Such a modest intrusion can only become a "seizure" if the mail is significantly delayed. When expedited investigatory procedures cause a limited suspension of processing of mail, the reasons underlying the Fourth Amendment's protections against seizures do not apply. These reasons do not arise unless or until the procedures cause a substantial delay in delivery, invoking protection against unreasonable seizures, or until the procedures become intrusive, invoking protection against unreasonable searches.[1]

The Supreme Court has held that only a significant intrusion will trigger Fourth Amendment protection. Short detentions of packages raise no genuine privacy concerns. Detention of a package causes "no possible invasion of the right 'to be secure' in the 'persons, houses, papers, and effects' protected by the Fourth Amendment against unreasonable searches and seizures." *United States v. Van Leeuwen,* 397 U.S. 249, 252, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). The Court in *Van Leeuwen* also made clear that "[t]he significant Fourth Amendment interest was in the privacy of this first-class mail; and that privacy was not disturbed or invaded until the approval of the magistrate was obtained." *Id.* at 253, 90 S.Ct. 1029.

Our precedents have never read *Van Leeuwen* to require reasonable suspicion for short, unintrusive detentions of mail. In *United States v. Hillison,* 733 F.2d 692, 695–96 (9th Cir.1984), we stated only that *Van Leeuwen* did not require probable cause for such detentions. We did not say that reasonable suspicion is required as the applicable standard for nonintrusive detentions of mail for investigation. The Supreme Court itself has said that a *Terry* protective search for weapons, which requires reasonable suspicion, is more intrusive than this type of mail detention. *See Van Leeuwen,* 397 U.S. at 253, 90 S.Ct. 1029. In *United States v. Aldaz,* 921 F.2d 227, 229 (9th Cir.1990), we said that postal authorities may "seize and detain packages if they have a reasonable and articulable suspicion of criminal activity." However, *Aldaz*'s reasonable suspicion standard would have been applied only to a detention that would delay the date of delivery.[2] In *United States v. England,* 971 F.2d 419, 421 (9th Cir.1992), we explicitly rejected the contention that *any* detention of mail counts as a Fourth Amendment "seizure," and we held that a brief detention is not a "seizure" when the package is flown to the destination on the same plane that would have carried it absent detention.

Investigators may inspect mail as they wish without any Fourth Amendment curtailment, so long as the inspection does not amount to a "search," and so long as it is

---

**1.** The Supreme Court has recently reminded us that when the reasons for a rule are no longer present, the rule may not apply. *See Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 2503, 150 L.Ed.2d 653 (2001) (quoting Lord Coke, *"Cessante ratione legis cessat ipse lex "*—"The rationale of the a legal rule no longer being applicable, that rule itself no longer applies").

**2.** *Aldaz* concerned packages sent from an Alaskan bush town that received mail service only by air. After the packages were flown to

the transferring station, they were sent to an inspector in Anchorage instead of to the intended destination. Although the packages were cordoned off in a separate pouch, we noted that they would not have reached their destination any sooner than when the inspector received them. *Aldaz,* 921 F.2d at 231. Because *Aldaz* only assessed the reasonableness of the *delay* in the mail, it is consistent with the rule required by *Van Leeuwen,* 397 U.S. at 252, 90 S.Ct. 1029.

conducted quickly enough so that it does not become a seizure by significantly delaying the date of delivery[3]. Inspectors without more may choose a particular package to detain in order to examine the addressee or return address and investigate further, as Officer Jaworowski did here. *See United States v. Choate*, 576 F.2d 165 (9th Cir.1978) (holding that looking at information contained on the outside of mail does not implicate the Fourth Amendment). Postal authorities may also use scientific methods, such as x-rays, irradiation, or other processes, to detect or eradicate materials in the mail that may pose a grave risk to society.[4] Authorities could, for example, irradiate all the mail in a particular facility, because this will not delay delivery beyond any other piece of mail sent from that location, and because irradiation may be the only means by which to achieve certain objectives. *See Camara v. Municipal Court*, 387 U.S. 523, 537, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (upholding building inspections because "it is doubtful that any other canvassing technique would achieve acceptable results").

Only if the delivery date becomes delayed should reasonable suspicion be required to continue the detainment or inspection. Here, Officer Jaworowski had reasonable suspicion initially to detain the package. But he did not at all need it for the minimal intrusion that occurred. He kept the package in his office and investigated the addresses, phone numbers, and names on the outside of the package. He mailed the package that same day to Inspector Erdahl in Seattle, the package's destination area. The post office was able to deliver the package the next day. Only if the package was likely to miss its anticipated Friday delivery date by a significant degree would Jaworowski and Erdahl need to show "a reasonable and articulable suspicion of criminal activity."[5]

Postal authorities have discretion without constitutional restraint to take reason-

**3.** If a search or a seizure has occurred, it may still be allowed, but only when it is "reasonable" under the Fourth Amendment. When one considers reasonableness, it requires consideration of the degree of cause for the search or seizure. And the level of required cause, such as probable cause for a search or reasonable suspicion for a *"Terry"* stop varies with the degree of intrusion by the government on the person's privacy and other interests protected by the Fourth Amendment. But none of these interests are implicated when postal inspectors, postal police, or other authorities examine the outside of an envelope or assess its characteristics without intruding on private communications. There is, for example, no reasonable expectation of privacy in the designated return address on a letter, and it may be freely investigated so long as the duration of investigation is sufficiently brief that no seizure occurs.

**4.** Despite (or some might say because of) advances of science, arts, law, and the cooperative efforts of many cultures, all is not safe in the world. Some persons may seek to use innocent mechanisms like the mails to harm others. Indeed, our society must consider the possibility that chemical or biological agents, including anthrax, sarin, or other toxins, and perhaps other weapons of mass destruction, may be transmitted by mail. No doubt there are limits, but as a general rule the Constitution does not bind the hands of postal authorities in a way that would prohibit them from taking reasonable and nonintrusive investigatory or curative steps to protect the public.

**5.** After receiving the package on Friday, Postal Inspector Erdahl delayed delivery further, and the package was not received by the designated addressee until the following Wednesday. However, by the time Erdahl had delayed the package's delivery past Friday, postal inspectors not only had reasonable suspicion to investigate further, but likely had probable cause to seize the package or to search its contents. They had learned, in addition to the other factors previously known, that the recipient's address had been vacant for several months, and it is not uncommon that drug mailings are sent to vacant addresses.

able investigative or curative steps that do not intrude on privacy and that do not significantly delay mail. Although this case presented grounds for reasonable suspicion to detain the PCP-filled package, and the government presented those grounds, our law did not require that showing for limited investigatory detention. I write to point out this view, which may be pertinent when a different case of postal service investigation and detention is presented.