**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Rosa HERNANDEZ, Defendant–**
**Appellant.**

No. 01–10557.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 1, 2002.

Filed Dec. 23, 2002.

Birney B. Bervar, Honolulu, HI, for the defendant-appellant.

Chris A. Thomas, Assistant United States Attorney, Honolulu, HI, for the plaintiff-appellee.

Before: SCHROEDER, Chief Judge, ALARCÓN and FISHER, Circuit Judges.

ALARCÓN, Circuit Judge.

Rosa Hernandez ("Hernandez") appeals from the sentence imposed following her conditional guilty plea to charges of possession with intent to distribute crystal methamphetamine in violation of 21 U.S.C. § 841(a)(1) and conspiracy to possess with intent to distribute in violation of 21 U.S.C. § 846. She contends that the district court erred in denying her motion to suppress evidence seized from a mailed package and the statement she gave to law enforcement officers while in custody. Hernandez seeks reversal on the ground that she was deprived of her Fourth Amendment right to be free from an un-

reasonable interference with her possessory interest in the mailed package. She also claims that the statements she made were the fruit of an illegal seizure. We review de novo a district court's decision to deny a motion to suppress. *United States v. Percy,* 250 F.3d 720, 725 (9th Cir.), *cert. denied,* 534 U.S. 1009, 122 S.Ct. 493, 151 L.Ed.2d 405 (2001) (No. 01–6444). A warrantless seizure is a mixed question of law and fact subject to de novo review. *United States v. Aldaz,* 921 F.2d 227, 229 (9th Cir.1990). Reasonable suspicion is determined de novo. *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

We affirm the district court's denial of the motion to suppress and dismiss the appeal of the sentence because we conclude that the detention of the express mail package was reasonable.

## I

On March 28, 2000, Robert E. Phillips ("Phillips"), a postal inspector assigned to the Honolulu Office of the United States Postal Service, was informed by a postal inspector in California that a suspicious express mail package had been sent to Hawaii. Phillips instructed the express mail coordinator at the Honolulu Post Office to "capture" the package upon its arrival. The package was addressed to Hernandez.

Phillips received the package at approximately 3:00 p.m. on March 29, 2000, which was past the time for delivery of express mail on that day. Had he not intercepted the package, it would have been delivered sometime on the following day, March 30, 2000. Phillips inspected the package and detained it for further investigation based on the following factors:

(1) his investigation of several databases revealed that the parcel had a correct return address, but the return address-

ee "Quiuirly Hernandez," could not be verified as living at that address;

(2) the express mail label was handwritten and sent person-to-person;

(3) the package was mailed from California, a known drug-source state;

(4) the package was almost completely taped on all seams; and

(5) the package was sent via express mail.

Phillips requested a canine examination of the package at approximately 1:00 p.m. on March 30, 2000. He testified that he did not call for the canine unit prior to that time because he was making travel arrangements for witnesses scheduled to appear for trial the following week. At roughly 1:50 p.m. on March 30, 2000, Sheriff Charles Lacaden and his canine arrived at the Post Office to perform the sniff. The canine alerted on the package addressed to Hernandez.

By 7:25 p.m. that same evening, Phillips completed an affidavit in support of a search warrant application. A United States Magistrate Judge issued a warrant to search the package at 10:30 a.m. the following morning. Phillips executed the warrant from 12:45 p.m. to 2:00 p.m. on March 31, 2000. He discovered approximately five pounds of crystal methamphetamine and ten grams of heroin in the package. He replaced the drugs with "pseudo-drugs," placed a beeper in the package set to alert when the package was opened, and resealed the package.

On April 1, 2000, a warrant to search Hernandez's residence was obtained. At approximately 6:00 p.m. that same day, Phillips and members of the Honolulu Police Department made a controlled delivery of the parcel. Once the beeper alerted, indicating that the package had been opened, Honolulu police officers executed

the search warrant, recovered the parcel, and arrested Hernandez.

After Hernandez was advised of her *Miranda* rights, she signed a statement of rights and waiver form. Prior to signing the waiver form, Hernandez wrote, "I think I want to answer questions at this time with out [sic] a lawyer." She then provided a statement implicating herself and her co-defendants as being involved in a conspiracy to possess crystal methamphetamine with intent to distribute it. After her statement was typed, Hernandez reviewed it, and initialed the beginning and end of each paragraph.

On May 31, 2000, Hernandez filed a motion to suppress the controlled substance seized from the package and the statement she made following her arrest. The district court denied the suppression motion. Subsequently, Hernandez entered a conditional plea of guilty, reserving her right to appeal the denial of her motion to suppress. Hernandez timely filed a notice of appeal. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

## II

■ To determine whether the district court properly concluded that the detention of the mailed package did not violate the Fourth Amendment, we must first identify the nature of the interest an addressee has in a package delivered to postal authorities. It has long been established that an addressee has both a possessory and a privacy interest in a mailed package. *See Ex parte Jackson,* 96 U.S. 727, 732, 24 L.Ed. 877 (1877) (holding that sealed packages in the mail can not be opened without a warrant); *Walter v. United States,* 447 U.S. 649, 654, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980) (holding that even though federal agents obtained mailed packages of videos lawfully, they nevertheless violated the Fourth Amend-

ment when they viewed the videos without a warrant); *United States v. Gill,* 280 F.3d 923, 929 (9th Cir.2002) (stating that even with express mail, the predominant Fourth Amendment interest in the mailed package is in the privacy of its contents, not merely in its prompt delivery). Hernandez does not claim that her privacy interest in the contents of the package was violated when it was opened pursuant to a search warrant after a canine detected that it contained a controlled substance. Instead, Hernandez challenges Phillips's initial detention of the package and the delay in calling for a canine unit to sniff the package. Therefore, the sole issue before us is whether Phillips unreasonably interfered with Hernandez's possessory interest in the mailed package prior to requesting a canine examination.

■ A person who voluntarily deposits mail in the United States mail for delivery retains a limited possessory interest in the mailed item. *See United States v. England,* 971 F.2d 419, 420 (9th Cir.1992) (noting that a person who mails an item retains "far less of an interest" in the item than a person who checks his luggage for transport with a common carrier). "[T]he mere detention of mail not in [the addressor's] custody or control amounts to at most a minimal or technical interference with [the addressor's] person or effects, resulting in no personal deprivation at all." *United States v. Place,* 462 U.S. 696, 718 n. 5, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (Brennan, J., concurring) (quoting *United States v. Place,* 660 F.2d 44, 53 (2d Cir. 1981), *aff'd,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)). Although a person has a legitimate interest that a mailed package will not be opened and searched en route, *see United States v. Jacobsen,* 466 U.S. 109, 114, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), there can be no reasonable expectation that postal service em-

ployees will not handle the package or that they will not view its exterior, *cf. Smith v. Maryland,* 442 U.S. 735, 743–44, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (stating that "[t]his Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.").

The recipient of a mailed item, on the other hand, has a reasonable expectation that the mail will not be detained by postal employees beyond the normal delivery date and time. In other words, an addressee's possessory interest is in the timely delivery of a package, not in "having his package routed on a particular conveyor belt, sorted in a particular area, or stored in any particular sorting bin for a particular amount of time." *United States v. Demoss,* 279 F.3d 632, 639 (8th Cir.2002) (Hansen J., concurring). *See also England,* 971 F.2d at 420–21 (holding that there was no Fourth Amendment "seizure" where delivery of package was not delayed, because it is the extent of the interference with the defendant's possessory interest in the property that determines whether a seizure has occurred); *United States v. Vasquez,* 213 F.3d 425, 426 (8th Cir.2000) (holding that no detention occurred when the officers had not delayed or interfered with the normal processing of the package).

The Supreme Court has held that even though first-class mail is protected by the Fourth Amendment from unreasonable search and seizure, it is not beyond the reach of all inspection. *United States v. Van Leeuwen,* 397 U.S. 249, 251–52, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). Rather, the question is "whether the conditions for its detention and inspection have been satisfied." *Id.* at 252, 90 S.Ct. 1029.

Thus, Hernandez had a protected interest in the timely delivery of the express mail package. To determine wheth-

er the Government's interference with that interest was reasonable within the meaning of the Fourth Amendment, we must first decide whether the initial detention of the package was based on reasonable suspicion.

### III

Postal inspectors may detain a package to conduct an investigation "if they have a reasonable and articulable suspicion" that it contains contraband or evidence of illegal activity. *Aldaz,* 921 F.2d at 229. To determine whether reasonable suspicion exists, reviewing courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). In evaluating the totality of the circumstances, the court may not consider each factor in isolation. *See id.* at 274, 122 S.Ct. 744 (rejecting evaluation of the listed factors in isolation from each other as a type of "divide-and-conquer analysis"). Reasonable suspicion may exist even if each factor, standing alone, is susceptible to an innocent explanation. *Id.* at 277–78, 122 S.Ct. 744.

Furthermore, while the determination of reasonable suspicion is exceedingly fact-specific, the circumstances taken together must be evaluated as they would be "understood by those versed in the field of law enforcement." *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Such an approach allows officers "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Arvizu,* 534 U.S. at 273, 122 S.Ct.

744 (quoting *United States v. Cortez,* 449 U.S. at 418, 101 S.Ct. 690).

Here, postal inspector Phillips had reasonable and articulable suspicion to detain the package for a drug dog sniff test. At the motion to suppress hearing, Phillips explained that his formal training, personal experience and conversations with other inspectors all contributed to his regarding as suspicious certain characteristics of the package. In particular, Phillips identified five factors that, together, led him to detain the package. First, Phillips could not confirm the name of the return addressee, and drug traffickers, generally wishing to conceal their identities, often use fictitious names. A fictitious name or address, Phillips testified, is a highly reliable indicator of the presence of controlled substances. Second, the package was shipped by express mail, and drug traffickers often use express mail because they can track packages easily and the drugs generally arrive quickly and predictably.[1] Third, the label on the package was handwritten, and traffickers usually send packages of drugs from one individual to another with handwritten labels, instead of from one business to another with printed labels. Fourth, the package had been mailed from California, a known drug source state. Fifth, the package had been taped up "fairly well"—all of the seams were taped, except for one four or five inch section on the bottom right of the parcel—and traffickers often tape the seams of drug packages in order to conceal the scent of the contraband from narcotics detector dogs.

Each of the factors Phillips identified as contributing to his suspicion also appears to be one of the elements of the Postal Inspection Service's drug package profile, and those factors' presence in that profile increases our confidence in the reasonableness of Phillips' suspicion. Phillips himself acknowledged as a source of his knowledge formal instruction he received during a period of specialized training. He also alluded to discussions he had had with other inspectors about "profile characteristics." Other courts have described in greater detail the postal service's drug package profile. In *United States v. Hill,* 701 F.Supp. 1522, 1528 (D.Kan.1988), the court explained, "[t]he Drug Package Profile does not contain completely arbitrary criteria. Instead, the profile was developed at a national level and was based on information gleaned from national investigations of narcotics mailings." *United States v. Lux,* 905 F.2d 1379 (10th Cir. 1990), lists seven characteristics that were included in the profile at that time. Several of the factors mentioned in *Lux* support the reasonableness of Phillips' suspicion: a package taped to close or seal all openings, handwritten or printed labels, and fictitious return address. *Id.* at 1380. Also, *United States v. Cantrall,* 762 F.Supp. 875, 879 (D.Kan.1991), mentions that inspectors pay attention to a package's city of origin. Here, the fact that the package had been mailed from California, a known drug-source state, heightened Phillips' concern.

In sum, looking at the totality of the circumstances, we hold that Phillips had a reasonable suspicion sufficient to justify his detention of the package so that a drug dog could smell it. Here, a trained postal inspector relied on his formal training, his own experience and his conversations with other inspectors. He identified five sepa-

---

1. In *United States v. Dennis,* 115 F.3d 524, 532 (7th Cir.1997), the court reported that one postal inspector "explained that because of its high cost, only about five percent of all Express Mail is personal correspondence and that because of its speed and reliability and because the postal service provides a free telephone tracking service, drug traffickers frequently use the service to send personal correspondence containing contraband."

rate factors, each of which appears to be part of a national drug package profile developed by the Postal Inspection Service. Together, those five factors indicated to him that there was a reasonable probability that the package contained drugs. Because Phillips had reasonable suspicion to detain the package, we conclude that the initial seizure was not unreasonable under the Fourth Amendment.

## IV

Hernandez also argues that the detention of the package was unreasonable because Phillips waited twenty-two hours after receiving the parcel to call for a canine sniff. She claims that the Fourth Amendment does not allow seizures for indefinite periods of time until government agents decide they have time to conclude their investigation.

▬ Even if the initial seizure of a mailed package is based on reasonable suspicion, a prolonged detention is unreasonable under the Fourth Amendment. *Van Leeuwen,* 397 U.S. at 252, 90 S.Ct. 1029; *Aldaz,* 921 F.2d at 230. The Supreme Court first addressed the issue of the prolonged detention of mailed packages in *United States v. Van Leeuwen.* A police officer seized two packages shortly after they were delivered to a post office in Mt. Vernon, Washington for mailing. Within one and one-half hours of the initial seizure, the police had probable cause to suspect that one of the parcels contained illegal coins. The officers did not obtain a search warrant until twenty-seven and one-half hours later. The Court held that although theoretically, "detention of mail could at some point become an unreasonable seizure," the twenty-nine-hour delay in obtaining a search warrant after the mailing was reasonable under the circumstances. *Id.* at 252–53, 90 S.Ct. 1029. The Court reasoned that detention for one and one-half hours for an investigation was not

excessive, and that at that point, probable cause existed to suspect criminal activity. *Id.* The Court further pointed out that the delay in obtaining a search warrant was due, in part, to an inability to reach officials in another city until the following morning to gather information about the second package. *Id.*

In *United States v. Dass,* 849 F.2d 414 (9th Cir.1988), postal authorities and law enforcement officers detained packages from seven to twenty-three days after they had probable cause to obtain a search warrant. *Id.* at 414. Despite the fact that probable cause existed, we found that the delay could have been much shorter had the authorities acted more diligently. *Id.* at 415. We therefore held that the delay in securing a search warrant was unreasonable. *Id.*

We also addressed the question of a prolonged detention in *United States v. Aldaz,* 921 F.2d 227 (9th Cir.1990). In *Aldaz,* we rejected the argument that prior cases created a bright-line rule for unreasonable detention of no more than twenty-nine hours. *Id.* at 230. Instead, we held that a court must determine, on the facts of each case, whether the delay in detaining a package was unreasonable. *Id.* In assessing the reasonableness of the three-to-five-day detention in *Aldaz,* we examined the reasonableness of each component of the delay. *Id.* at 230–31. First, we determined that two days to transfer the packages from a remote Alaskan village to another city for a dog sniff was reasonable. *Id.* at 231. Second, we held that the three and one-half hour interval between the arrival of the package and its receipt by the postal inspector was also reasonable. *Id.* Next, we examined the time between the inspector's receipt of the package at 4:30 p.m. in the afternoon, and the drug sniff the following morning at 9:45 a.m. *Id.* We pointed out that the inspector received the package at the end of the workday,

and noted that although he called immediately to arrange a drug sniff, no dogs were available that evening. Thus, we ruled that the seventeen-hour delay in arranging a drug sniff was not unreasonable. *Id.* Finally, we concluded that the five-hour delay between the drug sniff and the execution of the warrant was not unreasonable because it was largely attributable to administrative requirements for securing a warrant. *Id.*

Most recently, we addressed the reasonableness of the length of a detention in *United States v. Gill,* 280 F.3d 923 (9th Cir.2002). The defendant in *Gill* mailed a package from California to Washington on Thursday, August 5, 1999. *Id.* at 925. The inspector received the package on August 6, 1999. *Id.* at 926. He conducted a canine examination, and drafted the search warrant application, which was to be reviewed by a United States Attorney over the weekend. *Id.* at 926. The inspector continued his investigation on Monday, August 9, 1999 (because the canine did not alert on the package), and completed the search warrant application on August 10, 1999. *Id.* at 926–27. A magistrate judge authorized the search warrant on the following day. *Id.* We found that despite the six-day delay, the investigation was not conducted at a "leisurely pace." *Id.* at 929. We also stated that it was not "insignificant that the investigation began the end of one week and was completed at the beginning of the following week." *Id.* Therefore, we held that under the circumstances, the detention for six days was reasonable. *Id.*

■■■ Hernandez contends that the package was unreasonably detained for twenty-two hours, from the time Phillips received the package at 3 p.m. on March 29, until the time he requested a canine sniff at 1 p.m. on March 30. She asserts that the detention began at 3:00 p.m. when Phillips received the package after its arrival at the Honolulu Post Office. She fails to consider, however, that 3:00 p.m. was past the delivery time for express mail on that day. Hernandez's package could not have been delivered until the following morning. Because Hernandez's possessory interest in the package was in the timely delivery of the parcel, Phillips did not interfere with that interest before the regular delivery time on March 30, 2000. The record does not indicate the precise time that Hernandez's packages would have been delivered but for the detention. Assuming, for the purposes of resolving this question, that the earliest time of delivery was 6:00 a.m. on March 30, 2000, the interference with Hernandez's possessory interest caused by the delay in calling for the canine sniff at 1:00 p.m. was only seven hours.[2] A seven-hour interference with Hernandez's possessory interest, prior to obtaining probable cause to seize the package, was not unreasonable under the circumstances.

"The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." *Illinois v. Lafayette,* 462 U.S. 640, 647, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). We must determine whether the delay was "reasonable" under the totality of the circumstances, not whether the Government pursued the least intrusive course of action.

---

**2.** Hernandez does not contest the reasonableness of the time it took Sheriff Lacaden and the canine unit to arrive at the Post Office, nor does she argue that the officers did not have the right to seize the package after the canine sniff. Once the canine alerted to the contents of the package, the right to detain the package based solely on reasonable suspicion terminated. Thereafter, Phillips had the right to seize the package based on probable cause.

Here, Phillips received the package at approximately 3:00 p.m. on March 29, 2000. Phillips testified that after making the initial determination to detain the package, he did not call for a canine sniff immediately because he was arranging for witnesses to travel from Virginia to Hawaii, for a trial scheduled the following week. After considering the totality of the circumstances, we conclude that the detention of the package was reasonable.

## V

Hernandez maintains that her statements to the police must be suppressed as the fruit of the alleged unreasonable detention of the express mail package. This argument lacks merit because the seizure of the package was reasonable under the Fourth Amendment.

AFFIRMED.